**Christine GROSS, Administratrix of the Estate of Linuel Gross, Deceased, Plaintiff,**

v.

**KENTON STRUCTURAL AND ORNA- MENTAL IRONWORKS, INC., et al., Defendants.**

No. C–1–82–1074.

United States District Court, S.D. Ohio, W.D.

Feb. 16, 1984.

Stephen T. MacConnell, Cincinnati, Ohio, for plaintiff.

Edward J. Utz, Cincinnati, Ohio, for Kenton Structural and Ornamental Ironworks, Inc.

Gary L. Herfel, Cincinnati, Ohio, for Gartner, Burdick, Bauer-Nilsen.

C.J. DeMichelis, Cincinnati, Ohio, for Korda Engineering Co.

Stephen A. Bailey, Cincinnati, Ohio, for Monarch Const. Co.

## OPINION AND ORDER

SPIEGEL, District Judge:

This matter is before the Court on a motion for summary judgment filed by defendant Monarch Construction Company (doc. 33), plaintiff's memorandum in opposition (doc. 43), and defendant's reply (doc. 49). Also before the Court is the motion for summary judgment filed by Gartner, Burdick, Bauer-Nilsen, Inc. (doc. 37), plaintiff's memorandum in opposition (doc. 44) and defendant's reply (doc. 50). The motions present two legal issues. For reasons to be discussed, we find that a plaintiff who makes a claim for and accepts workers' compensation benefits is not barred from proceeding with a common law action against her or her decedent's employer for intentional tort. Second, we find that *Blankenship v. Cincinnati Milacron Chemicals*, 69 Ohio St.2d 608, 433 N.E.2d 572 (1982), does not require that a plaintiff prove that an employer acted with an actual intent to harm an employee. In addition to these two legal conclusions, we find that there are several genuine issues of material fact. Accordingly, we conclude that both motions for summary judgment must be denied.

## I. Introduction

This case arises out of the death of Linuel Gross, plaintiff's husband. According to the complaint, Mr. Gross, a construction worker employed by defendant Monarch Construction Company (Monarch), was crushed to death when a steel staircase collapsed on him at the construction site of the Sheraton Springdale Hotel in Hamilton County in October, 1980. The defendant Gartner, Burdick, Bauer-Nilson, Inc. (Gartner) was the architect for the Sheraton Springdale Hotel.

■ The narrow question which we must decide on a motion for summary judgment is whether there is "no genuine issue as to any material fact and [therefore] that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The Court cannot try issues of fact on a Rule 56 motion, but is empowered to determine only whether there are issues to be tried. *In re Atlas Concrete Pipe, Inc.*, 668 F.2d 905, 908 (6th Cir.1982). The moving party "has the burden of showing *conclusively* that there exists no genuine issue as to a material fact and the evidence together with all inferences to be drawn therefrom must be read in the light most favorable to the party opposing the motion." *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir.1979) (emphasis original).

## II. Monarch Construction Company

Plaintiff alleges a cause of action against her decedent's employer under *Blankenship v. Cincinnati Milacron Chemicals*, 69 Ohio St.2d 608, 433 N.E.2d 572 (1982). She alleges that although it was aware that the staircase was in a dangerous and defective condition Monarch failed to correct that condition. Plaintiff further alleges that Monarch directed her decedent to work under the staircase, thereby intentionally disregarding Mr. Gross's safety. In addition, plaintiff maintains that Monarch's failure to correct a known dangerous condition amounts to willful, wanton and intentional malicious conduct.

The defendant Monarch first asserts that it is entitled to judgment with respect to plaintiff's claim and defendants' cross-claims because the undisputed evidence demonstrates that the plaintiff and co-defendants have failed to present any evidence of intentional activity by Monarch which would make Monarch liable under *Blankenship*. Defendant further asserts that plaintiff's acceptance of benefits under Ohio Workers' Compensation laws bars her from proceeding against her decedent's employer. We will consider this latter issue first, for if defendant is correct then there is no need to address the first aspect of the motion.

A. Relationship between *Blankenship* actions and the receipt of workers' compensation benefits.

It is undisputed that a workers' compensation claim was filed on behalf of plaintiff and decedent's surviving children and that the claim was recognized by the Ohio Industrial Commission. The issue, therefore, is whether filing for and accepting workers' compensation benefits bars a common law cause of action under *Blankenship*.

■ The Ohio Supreme Court has not considered this precise issue. Nor have we located any state appellate court rulings on the issue. The parties have cited five pertinent decisions by Courts of Common Pleas. Our task is to determine what the Ohio Supreme Court might do if it were faced with this question. *Harris Corporation v. Comair, Inc.*, 712 F.2d 1069, 1072 (6th Cir. 1983). Although we must give "proper regard" to the Common Pleas Court rulings, we are not bound by those rulings. *Commissioner v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782–1783, 18 L.Ed.2d 886 (1967).

■ The general rule in Ohio is that an employee who receives workers' compensation benefits may not also recover damages for the same injury in a lawsuit against his employer. Ohio Constitution, Art. II, Sec. 35; O.R.C. § 4123.74. However, the Supreme Court of Ohio recognized an exception to the exclusive remedy rule, holding that the immunity granted to employers

under the workers' compensation laws does not extend to intentional torts. *Blankenship v. Cincinnati Milacron Chemicals,* 69 Ohio St.2d 608, 433 N.E.2d 572 (1982). This decision was reaffirmed in *Nayman v. Kilbane,* 1 Ohio St.3d 269, 439 N.E.2d 888 (1982).

Defendant refers us to the reasoning of *Blankenship:*

> Since an employer's intentional conduct does not arise out of employment, R.C. § 4123.74 does not bestow upon employers immunity from civil liability for their intentional torts.

69 Ohio St.2d at 613, 433 N.E.2d 572. Defendant argues that *Blankenship* clearly distinguishes between injuries arising outside of employment (that is, those resulting from the employer's intentional tortious conduct) and injuries arising out of employment (that is, those resulting from accidents or an employer's negligence). As defendant reads *Blankenship,* workers' compensation is the exclusive remedy for the latter type of injury and a common law action based upon an intentional tort is the exclusive remedy for the first type of injury. Defendant concludes that filing for and accepting workers' compensation benefits amounts to an election of remedies that bars a *Blankenship* action against an employer. In other words, defendant maintains that when one files a workers' compensation claim, one admits that the injury arose out of employment. This "admission," in defendant's eyes, bars the claimant from then seeking damages through a common law action against the employer.

On at least four occasions since the *Blankenship* decision Ohio Courts of Common Pleas have held that an injured employee who accepts workers' compensation benefits is estopped from bringing an action for damages against the employer, based upon intentional tort. *Brady v. The Gulf Oil Company,* Case No. A8208211 (CCP Hamilton Cty., Oct. 14, 1983); *Walker v. Mid-States Terminal,* Case No. 80-3024 (CCP Lucas Cty., July 25, 1983); *Hunter v. Litton Industries,* Case No. 82CV-03-1608 (CCP Franklin Cty., April 29, 1983); *Varnes v. Willis Day Moving & Storage Company,* Case No. CI82-1949 (CCP Lucas Cty., March 31, 1983). All four decisions are based, at least in part, upon *Blankenship.* The reasoning of Judge McQuaid is typical:

> Additionally, since the Supreme Court has found that an employee injured by the intentional, tortious conduct of the employer is not an injury received in the course of and arising out of the worker's employment and to be compensable an injury must be received in the course of, and arise out of, the injured worker's employment [O.R.C. § 4123.01(C)], the two types of injuries are mutually exclusive. Therefore, it is not possible for an injured employee to collect workers' compensation benefits for an injury that results from his employer's intentional tortious conduct.
>
> Thus, since the plaintiff filed for benefits and it was determined by the Commission that the plaintiff had sustained injuries arising out of and in the course of his employment and granted benefits to the plaintiff, compensation is limited to the benefits provided by workers' compensation and he cannot file an action against the employer asserting that his injuries were caused by the defendant's intentional tortious conduct.

*Varnes, supra* (citations omitted). The reasoning of the other cases is similar. *See, e.g., Hunter, supra.* ("Plaintiff cannot be allowed to voluntarily partake of Workers' Compensation with the implicit agreement that her injuries were of accidental nature and then allege in another action that she was the victim of an intentional tort").

Another Ohio trial court, however, has read *Blankenship* differently. In *Gains v. Webster Manufacturing Company,* Case No. 81 CIV 091 (CCP Lake Cty., Nov. 29, 1982), the court refused to set off the jury award by the amount of workers' compensation benefits received by the plaintiff. *Gains,* like the instant case, was a *Blankenship* action. The court reasoned that workers' compensation is in the nature of

occupational insurance and thus, like general insurance, should not be set off. The court then stated:

A recovery which compensates one's intentional injury in no way duplicates a partial award granted by the industrial commission for accidental, work-related injuries. More appropriately, it serves to equitably reimburse the injured employee or his representative while simultaneously ensuring accountability from employers for their intentional and tortious actions. In opening an avenue previously closed [a reference to the *Blankenship* decision], redress is now available for worker pain and suffering, for the imposition of punitive sanctions and espousal recovery for lost services proximately flowing from intentional employer conduct.

*Gains, supra.* We find *Gains* the better reasoned view and the position most consistent with the language and tone of *Blankenship*, as well as the purpose of Ohio's workers' compensation scheme.

Admittedly, the Supreme Court of Ohio reasoned that employers are not immune from civil liability for injuries resulting from intentional torts because such injuries do not arise out of employment. 69 Ohio St.2d at 613, 433 N.E.2d 572. Nevertheless, the plaintiffs' action was based upon their exposure to toxic fumes "within the scope of their employment." *Id.* at 608, 433 N.E.2d 572. Moreover, the focus in *Blankenship* was not on the employee but rather on the employer, in particular on whether the immunity created by the Workers' Compensation Act extended to an employer's intentional torts.

Perhaps most important is the language the Supreme Court used in discussing the legislative goals underlying the Workers' Compensation Act.

The workers' compensation system is based on the premise that an employer is protected from a suit for negligence in exchange for compliance with the Workers' Compensation Act. The Act operates as a balance of mutual compromise between the interests of the employer and the employee whereby employees relinquish their common law remedy and accept lower benefit levels coupled with the greater assurance of recovery and employers give up their common law defenses and are protected from unlimited liability. But the protection afforded by the Act has always been for negligent acts and not for intentional tortious conduct. Indeed, workers' compensation Acts were designed to improve the plight of the injured worker, and to hold that intentional torts are covered under the Act would be tantamount to encouraging such conduct, and this clearly cannot be reconciled with the motivating spirit and purpose of the Act.

It must also be remembered that the compensation scheme was specifically designed to provide less than full compensation for injured employees. Damages such as pain and suffering and loss of services on the part of a spouse are unavailable remedies to the injured employee. Punitive damages cannot be obtained. Yet, these damages are available to individuals who have been injured by intentional tortious conduct of third parties, and there is no legitimate reason why an employer should be able to escape from such damages simply because he committed an intentional tort against his employee.

In addition, one of the avowed purposes of the Act is to promote an injury-free work environment. Affording an employer immunity for his intentional behavior certainly would not promote such an environment, for an employer could commit intentional acts with impunity with the knowledge that, at the very most, his workers' compensation premiums may rise slightly.

69 Ohio St.2d at 614–15, 433 N.E.2d 572 (citations and footnotes omitted). We read this passage as supporting the proposition that an injured worker may recover both workers' compensation and damages in a legal action. The Supreme Court's intent in *Blankenship* was obviously to increase the protection available to the worker, not

limit it. To hold that an employee allegedly injured by his employer's intentional tort must forego the guaranteed protection of the Workers' Compensation Act in order to gamble on being able to prevail in a common law action against his employer runs counter to the goals expressed in *Blankenship.*

We find additional support for our reading of *Blankenship* in *Nayman v. Kilbayne,* 1 Ohio St.3d 269, 439 N.E.2d 888 (1982), holding that a Common Pleas Court has jurisdiction to hear a claim for an intentional tort brought by an employee against his employer. In that case, the employer was seeking an order prohibiting the Common Pleas Court from proceeding with a suit filed by an employee against his employer on the grounds that the Common Pleas Court had no jurisdiction over the action. The precise question before the Supreme Court, therefore, was a jurisdictional one. However, it was undisputed that the employee in *Nayman* had applied for and received workers' compensation benefits. The employer argued that the Industrial Commission had exclusive jurisdiction over such matters. The Supreme Court disagreed, finding that where an intentional tort was alleged the Common Pleas Court had jurisdiction. As the Supreme Court refers to the employee's acceptance of workers' compensation benefits within its discussion, one can reasonably conclude that the Supreme Court did not find that the plaintiff's acceptance of benefits stripped the Common Pleas Court of jurisdiction or in any other way prevented the action from proceeding.

Secondly, as we read the Common Pleas decisions discussed earlier, they in essence hold that the determination of the Industrial Commission that an injury arose out of employment and is compensable under the Workers' Compensation Act is a final determination on the merits. In other words, these courts appear to use a *res judicata* analysis without using the term *res judicata.* We do not believe that the determinations of the Industrial Commission have any such *res judicata* effect.

▪ The general rule in Ohio is that where an administrative proceeding is of a judicial nature and where the parties have had an ample opportunity to litigate the issues involved, the doctrine of collateral estoppel may be used to bar litigation of issues in a second administrative proceeding. *Superior's Brand v. Lindley,* 62 Ohio St.2d 133, 403 N.E.2d 996 (1980). In order for the doctrines of *res judicata* or collateral estoppel to apply there must be an identity of parties and issues. *Beatrice Foods v. Lindley,* 70 Ohio St.2d 29, 434 N.E.2d 727 (1982). It has been held that since the Industrial Commission is not a court, the doctrine of *res judicata* does not apply to its awards. *Davis v. Industrial Commission,* 13 O.L.A.B.S. 305, *rev'd on other grounds* 126 Ohio St. 593, 186 N.E. 505 (1933). Proceedings of administrative agencies are considered quasi judicial if there is notice of a hearing and an opportunity for introduction of evidence. *State ex rel. Republic Steel Corp. v. Ohio Civil Rights Commission,* 44 Ohio St.2d 178, 339 N.E.2d 658 (1975). Although the employer receives notice when an employee files a claim for workers' compensation, O.R.C. § 4123.512(A), there is no hearing unless a claim is disputed, O.R.C. § 4123.515. If there is a hearing, both the employer and the employee have an opportunity to be heard but the hearing officer is not bound by common law or statutory rules of evidence. O.R.C. § 4123.515. Clearly the Industrial Commission would not be acting in a judicial capacity if a claim is undisputed and, therefore, its determination that an injury arose out of employment could not have *res judicata* effect. The record before us does not reveal whether plaintiff's claim was disputed, although common sense suggests that it was not.

▪ Furthermore, the issues presented to the Industrial Commission and those presented to the Court in an action based upon an intentional tort are not identical. The issue before the Commission is whether an injury was caused accidentally or by an employer's negligence. In the usual situation it is highly unlikely that either

party would have reason to introduce evidence tending to prove that the injury was the result of an employer's intentional tort. All that can safely be inferred from an award of workers' compensation benefits is that the employee's injuries arose out of his employment in some form. It is thus unreasonable to conclude that the plaintiff is subsequently estopped from raising an issue of intentional conduct where that issue was not considered by the Industrial Commission.

If, on the other hand, the Common Pleas decisions are based not on an estoppel theory but rather on an election of remedies theory, we still find ourselves unpersuaded. We do not believe that either the Ohio legislature or the Ohio Supreme Court intended that an injured employee would have to choose between the guaranteed protection of workers' compensation and less than full compensation or the hazards of litigation and the possibility of full compensation.

■ In summary, we conclude that the *Blankenship* action should be viewed as a supplemental remedy, rather than as an exclusive remedy, where an employee alleges injury resulting from his employer's intentional tort. Accordingly, we hold that an injured employee who files for and accepts workers' compensation benefits is not barred from proceeding with a common law action against the employer.

B. Intentional tortious act under *Blankenship*

The second aspect of defendant Monarch's motion for summary judgment is that neither the plaintiff nor any of the co-defendants have proved an intentional act by Monarch giving rise to liability. Defendant acknowledges that the Supreme Court did not identify what would constitute an intentional tort under *Blankenship*. Defendant points, however, to the cases cited by the Supreme Court in the *Blankenship* decision and infers from those cases and the Court's reliance on Larson's treatise, *Workmens' Compensation Law*, that under *Blankenship* a plaintiff must prove that an employer had an actual intent to injure the employee.

The issue of what constitutes an intentional tort under *Blankenship* is unsettled. The general rule is that a common law action against an employer will lie only where there is an actual intent to injure. *See* 2 A A. Larson, *Workmens' Compensation Law* § 68.13 (1982). Until *Blankenship*, the only state which did not require such intent was West Virginia which permits common law actions for "willful, wanton and reckless misconduct." *Mandolidis v. Elkins Industries, Inc.*, 246 S.E.2d 907 (W.Va.1978). Larson, however, also cites *Blankenship* as an exception to the general rule. Larson describes *Blankenship* as holding that employees and their spouses can sue their employer for the intentional use of chemicals known by the employer to be harmful and for failure to warn and to report the dangerous conditions to federal and state agencies as required.

■ Our reading of *Blankenship* persuades us that *Blankenship* does not require that plaintiff prove an actual intent to injure. The facts of *Blankenship*, as stated by the Supreme Court, certainly do not indicate that the Supreme Court would require such proof. We note further that the *Mandolidis* decision is quoted in *Blankenship*. 69 Ohio St.2d at 614 n. 11, 433 N.E.2d 572. Furthermore, in *Nayman* the Ohio Supreme Court held that a Common Pleas Court had jurisdiction to proceed with a trial of an action in which the employee was injured when his hand was caught in a punch press. We conclude that under *Nayman* and *Blankenship* failure to warn of a known danger may amount to intentional tortious conduct.

■ The following facts are undisputed. Monarch had the overall responsibility for the construction of the hotel, including the responsibility for hiring subcontractors. Kenton Structural and Ornamental Ironworkers, Inc. (Kenton) subcontracted to design, fabricate and erect the stairways in the hotel. Before installing the stairway involved in this litigation, Monarch placed

scaffolding under the landing of the stairway so that Kenton could erect the stairway. The scaffolding was a temporary support and was intended to hold the platform between the two parts of the stairway in place until a masonry wall could be built around it. The stairway design contemplated the construction of this masonry wall as well as a concrete base at the ground floor. It is not clear whether it was contemplated that the wall and concrete base be in place prior to the installation of the stairway. It is clear, however, that the stairway was installed before the masonry wall was completed or the slab for the concrete base poured. It is also clear that the wall into which the support beams were to bear was not yet grounded in place. It is also undisputed that plaintiff's decedent was ordered to spread and grade gravel underneath the stairs after the scaffolding was removed so that the concrete slab could be poured. It was at this point that the stairs collapsed.

Our review of the evidence offered by the parties reveals a substantial question of fact as to the extent of Monarch's knowledge, if any, of the danger posed by the stairway. We also find a considerable dispute about the propriety of Monarch's conduct in removing the scaffolding before the masonry wall was completed and the concrete slab of the base was poured. Both of these factual disputes go to the issue of Monarch's liability, if any. Given these disputes, we conclude that "it is for the trier of fact to initially determine whether the alleged conduct constitutes an intentional injury." *Blankenship*, 69 Ohio St.2d at 615, 433 N.E.2d 572. Accordingly, Monarch's motion for summary judgment must be and hereby is denied.

III. Gartner, Burdick, Bauer-Nilsen, Inc.

■ Defendant Gartner, an architectural firm, contracted with Springdale Hotel Ltd. in October, 1972. That contract provided that defendant would prepare plans and specifications for a hotel to be built in Springdale and would submit those plans and specifications to Monarch and the sub-

contractors to use in constructing the hotel. It is undisputed that the architect did not design the stairways in the hotel. That job was subcontracted to Kenton. However, Kenton was supplied with specifications and drawings provided to them by the defendant Gartner.

Plaintiff's allegations with respect to the architects are, first, that the stairway was designed by the architect, that the design was defective and that the defective design proximately caused the death of plaintiff's decedent; and second, that the architect breached a duty to monitor the installation of the stairway in order to assure that installation was done safely and properly. Defendant asserts that it did not design the stairway and secondly that it had no duty under the contract to monitor the installation.

Having reviewed the depositions and the other evidence submitted by the parties, we conclude that even though the ultimate design of the stairway was done by Kenton, defendant Gartner supplied the specifications and, moreover, that Kenton was required to submit shop drawings for approval to the architect. Therefore, we conclude that there is a dispute over who was ultimately responsible for the design of the stairs, in addition to a dispute as to whether the design was defective.

Finally, there is a considerable dispute as to the nature of the architect's supervisory responsibilities under its contract with Springdale Hotel. Article 1.5.4 of the contract between the owner and the architect provides:

The Architect shall visit the site at intervals appropriate to the stage of construction ... to become generally familiar with the progress and quality of the Work and to determine in general that the Work is proceeding in accordance with the Contract Documents. However, the Architect shall not be required to make exhaustive or continuous on-site inspections to check the quality or quantity of the Work. On the basis of such on-site observations as an Architect, the Architect shall keep the Owner informed

of the progress and quality of the Work and shall endeavor to guard the Owner against defects and deficiencies in the Work.

The contract further provides that the architect does not have control or charge of and is not responsible for "construction means, methods, techniques, sequences or procedures, or for safety precautions or programs in connection with the Work, for the acts or omissions of the Contractor, Subcontractors or any other persons performing any of the Work." Article 1.5.5. However, the contract also provides that the architect review and approve or take other appropriate action upon submittals of shop drawings, "but only for conformance with the design concepts of the Work and with the information given in the contract documents." Article 1.5.13. (doc. 37, exh. A).

In an affidavit filed with defendant's motion, Thomas L. Meacham, Jr., a registered professional architect who performed certain services in connection with the Sheraton Hotel, stated that defendant's only responsibilities with respect to the stairways "involved the establishment of general aesthetic criteria ... and the determination of the overall dimensions of the stairways." He further stated that shop drawings prepared by Kenton and sent to the architect were reviewed by defendant for the "purpose of determining whether Kenton's design meet the aesthetic criteria and dimensional requirements established by the architect."

Mr. Meacham's general conclusions, however, are not sufficient to withstand a motion for summary judgment. It is for the trier of fact to determine from all of the evidence, including the contract, the defendant's responsibilities under that contract with respect both to the design of the stairway and to supervision of the project.

Defendant Gartner also argues in its reply that plaintiff's expert witness testified at deposition that the stairway collapsed because the scaffolding was removed and that if the scaffolding had not been removed the collapse would not have occurred (doc. 50 at 3). Defendant concludes, therefore, that the architects could have no liability for plaintiff's death as this testimony establishes that Monarch's removal of the scaffolding was the proximate cause of Mr. Gross's death.

 We disagree. We note first that plaintiff's expert stated that a number of things caused the collapse. In addition, it is well-settled that the jury is not bound to accept the expert's opinion but merely to give it the weight that the jurors believe it should be afforded. The ultimate question of the proximate cause of plaintiff's decedent's death is a question for the jury.

With respect to defendant Gartner's motion, we find at least three disputed issues of material fact, *i.e.*, the adequacy and ultimate responsibility for the design of the stairway, the extent of the architect's supervisory duty, and the proximate cause of plaintiff's decedent's death. Accordingly, defendant Gartner's motion for summary judgment must be and hereby is denied.

## IV. Conclusion

In summary, then, we find as a matter of law that a plaintiff who makes a claim for and accepts workers' compensation benefits is not barred from proceeding with a common law action against her or her decedent's employer for intentional tort. Second, we find that *Blankenship* does not require that a plaintiff prove that an employer acted with an actual intent to harm an employee.

We find further that there are substantial issues of disputed fact as to the extent of Monarch's knowledge of the dangerous condition of the stairway and as to the quality of Monarch's conduct with respect to plaintiff's decedent. Finally, with respect to defendant Gartner we conclude that there are genuine issues of material fact with respect to the scope of defendant's responsibilities related to the design of the staircase. In addition, we find that there is a dispute as to the extent of the architect's supervisory responsibilities under the contract, and, finally, a dispute as

to proximate cause of plaintiff's decedent's death.

Accordingly, both motions for summary judgment are hereby denied.

SO ORDERED.