Robert B. **DAVIS**, et al., Plaintiffs,

v.

**ROCKWELL INTERNATIONAL CORP.,** Rockwell International Corp. Reinforced Plastics Division, S.M.C. Corp., Sheet Molding Compound Machinery Co., Inc., Defendants.

Civ. A. No. C82–1417.

United States District Court, N.D. Ohio, E.D.

Oct. 18, 1984.

Richard Dempsey, Cleveland, Ohio, for plaintiffs.

Roberta Y. Bavry, Porter, Wright, Morris & Arthur, Columbus, Ohio, for defendants.

## MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

This Memorandum and Order sets forth the reasons for this Court's September 25, 1984 Order denying defendant Rockwell International Corporation's ("Rockwell") motion for summary judgment.

Title 28 U.S.C. § 1332(a) provides subject matter jurisdiction in this diversity action.

### I.

Robert B. Davis was formerly employed as a mixer machine operator at Rockwell's Reinforced Plastics Division ("the Division") plant located in Ashtabula, Ohio. On May 28, 1980, his hand was partially crushed when it became caught between two power-driven rollers which are parts of a fiberglass molding machine. The injury occurred when, in the normal course of employment, Davis was attempting to clean the machine.

Davis applied for and collected workers' compensation benefits under the Ohio Workers' Compensation Act ("OWCA"), Ohio Rev.Code §§ 4123.01 *et seq.* Rockwell, a self-insured employer as provided for in Ohio Rev.Code § 4123.35, complied with the law and has paid the administratively-determined amount of benefits to Davis and his doctors. Davis has also filed an "Application for Additional Award for Violation of Specific Requirement" as provided for by the Ohio Constitution.

On May 28, 1982, Davis and his wife Emilie commenced this action against Rockwell, the Division, and eight other defendants.[1] The first three counts of the complaint concern the mixer machine and are not relevant to this motion. The fourth cause of action, however, states that the mixer was provided by Rockwell and the Division "for the use and operation by plaintiff and other employees in a dangerous and/or hazardous condition, thereby proximately causing his injuries." Davis further "states that these defendants had knowledge of the dangerous and hazardous condition of the machine and failed to correct and warn with respect thereto." Providing the mixer in such a condition and failing to correct it and warn employees of it "constituted intentional and malicious conduct and was in willful and wanton disregard of the health and safety of the plaintiff, and which proximately caused his injuries ..." Davis seeks $600,000 in compensatory damages and $1,000,000 in punitive damages.

In the fifth cause of action, Emilie Davis seeks $150,000 in compensatory damages and $300,000 in punitive damages for loss of her husband's services.

### II.

Rockwell claims that its participation in the workers' compensation system protects it from suit over an employee's work-related injury. It further contends that Davis' decision to collect workers' compensation benefits constitutes an election of remedies

---

1. "Davis" refers to Robert Davis unless otherwise noted.

which precludes him from bringing a civil action for intentional tort.

■ In this diversity action, the Court must follow the substantive law of the State of Ohio even if the Court considers the pertinent law to be unsound in principle or another rule preferable. *Erie v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Tennessee River Pulp & Paper Co. v. Eichleay Corp.*, 708 F.2d 1055, 1057 (6th Cir.1983). More precisely, only the law as expressed by the highest court of the state, in this case the Ohio Supreme Court, is binding on the Court. *Ruth v. Bituminous Casualty Corp.*, 427 F.2d 290, 292 (6th Cir.1970). If the Ohio Supreme Court has not spoken, the Court is obligated to follow published intermediate Ohio appellate court decisions. *Id.* Absent any state cases, the Court must express its best judgment, based on available information, as to what the Ohio Supreme Court would hold if faced with the issue presented by this case. *Tennessee River Pulp v. Eichleay Corp.*, 708 F.2d at 1057.

■ Under Fed.R.Civ.P. 56(c), summary judgment may be granted only if there is "no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." All evidence concerning the existence of a genuine issue of material fact must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Hasan v. CleveTrust Realty Investors, Inc.*, 729 F.2d 372 (6th Cir.1984); *Malis v. Hills*, 588 F.2d 545 (6th Cir.1978).

## III.

### A. *The Constitutional and Statutory Scheme*

Workers' compensation statutes, such as the OWCA, generally provide that benefits recoverable under the statute are the exclusive remedy available to an employee injured in the course of employment. *See generally Roof v. Velsicol*, 380 F.Supp. 1373 (N.D.Ohio 1974); 2A A. Larson, *The Law of Workmens' Compensation*, § 65.-10, at 12–1 (1982 & Supp.1983) ("Larson"). Section 35, Article II of the Ohio Constitution establishes the groundwork for the OWCA. In pertinent part, it provides:

For the purpose of providing compensation to workmen and their dependents, for death, injuries or occupational disease, occasioned in the course of such workmen's employment, laws may be passed establishing a state fund to be created by compulsory contribution thereto by employers, and administered by the state, determining the terms and conditions upon which payment shall be made therefrom. *Such compensation shall be in lieu of all other rights to compensation, or damages,* for such death, injuries, or occupational disease, and any employer who pays the premium or compensation provided by law, passed in accordance herewith, shall not be liable to respond in damages at common law or by statute for such death, injuries or occupational disease ... (Emphasis added).

■ Implementing the constitutional mandate, the Ohio legislature passed the OWCA. Ohio Rev.Code § 4123.74 provides:

Employers [in compliance with the OCWA] shall not be liable to respond in damages at common law or by statute for any injury, or occupational disease, or bodily condition, received or contracted by an employee in the course of or arising out of his employment ... whether or not such injury, occupational disease [or] bodily condition ... is compensable under Sections 4123.01 to 4123.94, inclusive, of the Revised Code.

For an injury resulting from an employer's violation of a specific safety standard, an employee may be granted an additional award of up to fifty per cent of the maximum award. The award is in the form of a penalty against the employer. Ohio Constitution, Section 35, Article II; *State ex rel. Zito v. Industrial Commission*, 64 Ohio St.2d 53, 413 N.E.2d 787 (1980); *State ex rel. Whitman v. Industrial Commission*, 131 Ohio St. 375, 3 N.E.2d 52 (1936).

■ The Ohio legislature also established a rule of construction, Ohio Rev. Code § 4123.95, which has been termed "clearly of assistance in determining the scope of employer immunity." *Blankenship et al. v. Cincinnati Milacron Chemicals, Inc.*, 69 Ohio St.2d 608, 612, 433 N.E.2d 572, *cert. denied*, 459 U.S. 857, 103 S.Ct. 127, 74 L.Ed.2d 110 (1982).[2] The section reads:

> Sections 4123.01 to 4123.94, inclusive, of the Revised Code, shall be liberally construed in favor of employees and the dependents of deceased employees.

■ The constitution and code reflect a legislated compromise between the interest of the employees and the concerns of the employers. On both sides, there is a *quid pro quo.* In return for a greater assurance of recovery, the employees relinquish their common law remedy and accept lower benefits. Employers sacrifice their common law defenses and, in turn, are protected from unlimited liability. *Blankenship,* 69 Ohio St.2d at 614, 433 N.E.2d 572; Larson § 65.10 at 12–4.

## B. *Intentional Tort*

■ Workers' compensation statutes, designed to improve the plight of the injured worker, do not, however, afford an employer immunity for its intentionally tortious behavior. As the Ohio Supreme Court held:

> An employee is not precluded by Section 35, Article II of the Ohio Constitution, or by R.C. 4123.74 and 4123.741 from enforcing his common law remedies against his employer for an intentional tort.

*Blankenship,* 69 Ohio St.2d at 608 (syllabus), 433 N.E.2d 572. While plain reading of the syllabus alone appears to indicate that Rockwell's motion must be denied, the issue is complicated by the need to define an intentional tort and to resolve the election of remedies issues not decided in *Blankenship.*[3]

Several reasons have been advanced to explain the intentional tort exception to the exclusive remedy provisions of workers' compensation statutes. The most persuasive is that an employer who commits an intentional wrong should not be permitted to argue that the resulting injury was accidental and within the exclusivity terms of the act. *See* Larson § 69.10 at 13–41 to 13–42. Following *Delamotte v. Midland Ross,* 64 Ohio App.2d 159, 161, 411 N.E.2d 814 (Lucas County 1978), *Blankenship* allowed an intentional tort claim because "the substance of the claim is not an injury . . . received or contracted by any employee in the course of or arising out of his employment within the meaning of R.C. 4123.-74." *Blankenship,* 69 Ohio St.2d at 613, 433 N.E.2d 572. The court also stated that one of the avowed purposes of the act, promoting a safe and injury free work environment, would not be fulfilled if an em-

---

**2.** This statement, of course, constitutes *dicta.* Except for *per curiam* opinions, the Ohio Supreme Court speaks as a court only through the syllabi of its cases. *Migra v. Warren City School District Board of Education,* —— U.S. ——, 104 S.Ct. 892, 898 n. 8, 79 L.Ed.2d 56 (1984); *Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437, 441 n. 3, 72 S.Ct. 413, 416 n. 3, 96 L.Ed. 485 (1952); *Cassidy v. Glossip,* 12 Ohio St.2d 17, 18, 24, 231 N.E.2d 64 (1967).

**3.** It should be noted here that intentional tort is not the only exception to the general rule that workers' compensation provides an exclusive forum and sole remedy. Other exceptions recognized under Ohio and federal law include: the dual capacity theory, *Guy v. Arthur H. Thomas Co.,* 55 Ohio St.2d 183, 378 N.E.2d 488 (1978) (injured hospital employee's suit not barred where employer hospital occupies sec-

ond or dual capacity as administering hospital); the parent and sibling corporation exception, *Boggs v. Blue Diamond Coal Co.,* 590 F.2d 655, 663 (6th Cir.), *cert. denied,* 444 U.S. 836, 100 S.Ct. 71, 62 L.Ed.2d 47 (1979) (without exception corporation could contract within itself for safety services and create immunity); third party suits for contribution and indemnity from employers, *Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp.,* 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956) (creates de facto exception to exclusive remedy rule); and allowing pursuit of Longshoremen's and Harbor Workers' Compensation Act ("LHWCA") claims after recourse to state compensation, *Landry v. Carlson Mooring Service,* 643 F.2d 1080, 1087–88, *reh'g denied,* 647 F.2d 1121 (5th Cir.1981) (complementary claims may be pursued successively by litigant).

ployer could commit an intentional tort with impunity having only to worry about its workers' compensation premiums rising. *Id.* at 615, 433 N.E.2d 572.

The majority of courts adopting the intentional tort exception have held that even egregious or reckless employer conduct that falls short of demonstrating a deliberate intent to injure will not permit an employee to overcome the exclusivity provision. For example, an employee who merely alleges constructive intent is limited to workers' compensation remedies and cannot resort to a common law action.[4] *See, e.g., Houston v. Bechtel Association Professional Corp.,* 522 F.Supp. 1094 (D.D.C. 1981) (exclusivity provision of Longshoreman's and Harbor Workers' Compensation Act ("LHWCA") bars employee's action arising out of employer's allegedly willful, wanton, reckless or unlawful conduct); Larson § 68.13. Employer misconduct that does not fall within the intentional tort exception includes: knowingly permitting a hazardous work condition to exist, *Sanford v. Presto Mfg. Co.,* 92 N.M. 746, 594 P.2d 1202 (N.M.Ct.App.1979); willfully failing to furnish a safe place to work, *Austin v. Johns-Manville Sales Corp.,* 508 F.Supp. 313 (D.Me.1981); intentionally failing to warn the employee of the dangers and health hazard to which he could be exposed, *Johnson v. Kerr-McGee Oil Industries, Inc.,* 129 Ariz. 393, 631 P.2d 548 (Ariz.Ct.App.), *appeal dismissed,* 454 U.S. 1025, 102 S.Ct. 560, 70 L.Ed.2d 469 (1981); and willfully and unlawfully violating a safety statute, *Cunningham v. Aluminum Co. of America, Inc.,* 417 N.E.2d 1186 (Ind.Ct.App.1981).

The Ohio Supreme Court, however, has taken a slightly different approach to this question. In *Blankenship,* employees and their spouses sued in tort for an employer's intentional use of chemicals it allegedly knew were harmful, and for its failure to warn and to report the dangerous conditions to federal and state agencies as required. 69 Ohio St.2d at 608, 433 N.E.2d 572. The complaint alleged that, within the scope of their employment, the employees were exposed to fumes and other noxious characteristics of several chemicals. Like Davis, the employees further alleged that notwithstanding the employer's knowledge that hazardous conditions existed, it "failed to correct said conditions, failed to warn ... [employees] of the dangers and conditions that existed ... [and] such failure on the part of the [employer] was intentional, malicious and in willful and wanton disregard of the health of [the employees]." *Id.* at 609, 433 N.E.2d 572. In reversing the lower court's dismissal of the action, the Ohio Supreme Court did not define an intentional tort.[5] Rather it concluded:

> ... it is for the trier of fact to initially determine whether the alleged conduct constitutes an intentional injury. In the instant case, the facts will demonstrate whether an intentional tort occurred or whether the injuries received by [the employees] were incurred in the course of and arising from ... employment such that worker's [sic] compensation would be exclusive.

*Id.* at 615, 433 N.E.2d 572.

Some guidance is provided by the court's reliance upon *Mandolidis v. Elkins Industries,* 161 W.Va. 695, 246 S.E.2d 907 (1978). *See id.* 69 Ohio St.2d at 614 n. 11, 433 N.E.2d 572. *Mandolidis* held that "the workers' compensation system completely

---

**4.** In describing intentionally tortious conduct Dean Prosser states:

> Intent is the word commonly used to describe the desire to bring about the physical consequences [of an act].... Intent, however, is broader than a desire to bring about physical results. It must extend not only to those consequences which are desired, but also to those which the actor believes are substantially certain to follow from what he does.

Prosser, *Law of Torts,* § 8 (4th ed. 1971). Likewise, the *Restatement (Second) of Torts* § 8A, comment (a), states that "intent" refers to the consequences of an act rather than to the act itself. *See id.* at 15–16.

**5.** Even though the court failed to define what acts constitute an intentional tort, Larson calls the *Blankenship* holding a "distinctly out-of-line view." *See* Larson § 68.13 at 13–8 n. 10.01; § 68.32(a) at 13–6 n. 43.8.

supplanted the common law tort system only with respect to *negligently* caused industrial accidents." *Id.* 246 S.E.2d at 911 (emphasis in original). While the opinion included willful, wanton and reckless conduct within the category of unprotected employer activity, *Mandolidis* emphasized that "conduct removing the immunity bar must be undertaken with a knowledge and an appreciation of the high degree of risk of physical harm to another created thereby.... Liability will require 'a strong probability that harm may result.'" *Id.* 246 S.E.2d at 914 (citing *Restatement (Second) of Torts* § 500, comment (f) (1965)). The *Blankenship* court's reliance on *Mandolidis* implies that a plaintiff need only satisfy this lesser standard of proof to adequately allege deliberate intent and avoid the exclusivity of remedy doctrine.[6]

The decision in *Nayman v. Kilbane,* 1 Ohio St.3d 269, 439 N.E.2d 888 (1982) (per curiam), offers some further guidance through the muddled state of Ohio law. In *Nayman,* an employee injured his hand while adjusting a punch press at his place of employment. He filed for, and was awarded, workers' compensation benefits. He then sued his employer, alleging that his injuries resulted from intentionally tortious acts. The trial judge denied the employer's motion for summary judgment and set the case for trial. The employer filed a complaint for a writ of prohibition in the Court of Appeals, which denied the requested relief. In a narrow holding based on its decision in *Blankenship,* the Ohio Supreme Court affirmed. It held that the Court of Common Pleas possessed subject matter jurisdiction over a suit in which an employee alleged that he had been intentionally injured by his employer. *Nayman,* 1 Ohio St.3d at 269–71, 439 N.E.2d 888.

■ While neither *Blankenship* nor *Nayman* deals precisely with the summary judgment issue presented by Rockwell's motion, this Court is persuaded that, construing the evidence in a light most favorable to Davis, the Ohio Supreme Court would hold that the alleged intentional tort states a cause of action sufficient to withstand a motion for summary judgment. Rockwell's attempt to draw a distinction between the single incident of injury suffered by Davis and the lengthy exposure to fumes alleged in *Blankenship* is immaterial. Under Ohio's liberal definition of the intentional tort exception to the exclusive remedy doctrine contained in the OWCA, there is a genuine issue of material fact as to whether Davis' injury was the result of an intentional tort or was incurred in the course of and arising from his employment.

This Court notes that another federal court in this state, in a lengthy and careful opinion, recently has reached the same conclusion. In *Gross v. Kenton Structural & Ornamental Ironworks,* 581 F.Supp. 390 (S.D.Ohio 1984), Judge Spiegel concluded that "*Blankenship* does not require that the plaintiff prove an actual intent to injure.... [U]nder *Nayman* and *Blankenship* failure to warn of a known danger may amount to intentional tortious conduct." *Id.* 581 F.Supp. at 397. Citing *Blankenship's* admonition that "it is for the trier of fact to initially determine whether the alleged conduct constitutes an intentional injury," 69 Ohio St.2d at 615, 433 N.E.2d 572, he denied a motion for summary judgment and permitted the plaintiff a jury trial to resolve the factual disputes.

## C. *Election of Remedies*

Rockwell's second contention is that Davis has elected his remedy—first by apply-

---

**6.** The quasi-legislative language of the *Blankenship* majority and concurring opinions conceivably supports an even broader interpretation, which this Court does not adopt. The majority opinion can be read as holding that an intentional failure to warn employees of dangerous conditions is by itself a "deliberate" intent to injure. Moreover, the statement that the OWCA affords protection for negligent acts, and the reliance on *Mandolidis,* could be read together to hold that intentional conduct comprises all that conduct beyond mere negligence, such as recklessness, willful and wanton behavior, even when entered into with presumed knowledge of the likely result but without specific intent to cause injury. 69 Ohio St.2d at 614, 433 N.E.2d 572; *see also id.* at 616–17, 433 N.E.2d 572 (Celebreeze, C.J., concurring) and at 618–20, 433 N.E.2d 572 (Brown, J., concurring).

ing for and receiving workers' compensation, and further by pursuing a claim for violation of a specific safety requirement. Rockwell argues that Davis cannot logically claim that his injury was caused by his employer's intentional tort—and thus, under *Blankenship,* did not arise out of his employment—after his injury was found compensable under OCWA. Under Rockwell's theory, Davis' successful pursuit of his statutory remedy acts as an election which bars the pursuit of a common law action for intentional tort.

The Ohio Supreme Court has not yet addressed the election of remedies issue in the context of *Blankenship* actions.[7] Traditionally, one purpose of the doctrine of election of remedies is to prevent double recovery and preclude a litigant from pursuing a remedy which, in a previous action, he rejected in favor of an alternative and inconsistent remedy. *United States v. Thomas,* 709 F.2d 968, 971 (5th Cir.1983); *Landry v. Carlson Mooring Service,* 643 F.2d 1080, 1087, *reh'g denied,* 647 F.2d 1121 (5th Cir.1981). Another purpose is to prevent needless experimentation with the remedies afforded by law. *Great American Insurance Co. v. Merchants & Manufacturers Mutual Insurance Co.,* 423 F.2d 1143, 1146 (6th Cir.1970). The prerequisites to application of the doctrine are: (1) the existence of two or more remedies; (2) the inconsistency of such remedies; and (3) a choice of one of them. 1B J. Moore, J. Lucas & T. Currier, *Moore's Federal Practice,* ¶ 0.45[7] (2d ed. 1983 & Supp. 1983–84); 25 Am.Jur.2d, Election of Remedies, §§ 8, 22 and 23.

Nevertheless, the election of remedies doctrine is a harsh and technical rule of procedure that is not favored in Ohio. *Great American Insurance Co. v. Merchants & Manufacturers Mutual Insurance Co.,* 423 F.2d at 1146; *Singer v. Scholz Homes, Inc.,* 36 Ohio App.2d 125, 303 N.E.2d 86 (Montgomery County 1973). Moreover, in the absence of an express legislative declaration to the contrary, courts have been reluctant to extend this harsh doctrine. *See Landry v. Carlson Mooring Service,* 643 F.2d at 1087 (citing *Sun Ship, Inc. v. Commonwealth of Pennsylvania,* 447 U.S. 715, 100 S.Ct. 2432, 65 L.Ed.2d 458 (1980)); *Newport News Shipbuilding and Dry Dock Co. v. Director, Office of Workers' Compensation Programs, United States Department of Labor,* 583 F.2d 1273, 1277 (4th Cir.1978), *cert. denied,* 440 U.S. 915, 99 S.Ct. 1232, 59 L.Ed.2d 465 (1979) (citing *Brooks v. United States,* 337 U.S. 49, 53, 69 S.Ct. 918, 920, 93 L.Ed. 1200 (1949) and *Friederichsen v. Renard,* 247 U.S. 207, 38 S.Ct. 450, 62 L.Ed. 1075 (1918)) (LHWCA and state workers' compensation claims are not mutually exclusive, but rather are complementary and may be pursued successively by litigant).

The jurisdictions which have decided the issue posed by Rockwell's motion are, not surprisingly, divided. Some courts have applied the election of remedies doctrine when an employee filed for and collected workmens' compensation benefits and then attempted to sue his employer in intentional tort. *See, e.g., Martinkowski v. Carborundum Co./Electro-Mineral Div.,* 108 Misc.2d 184, 437 N.Y.S.2d 237 (1981) (proof that employee was unaware of intentionally tortious conduct on part of employer would not abort her election to take statutory remedy); Larson § 67.32. Other courts, however, have allowed an employee to sue his employer for personal injuries sustained in an attack by a fellow employee even though workers' compensation benefits already had been accepted. *Flaherty v. United Engineers and Constructors,* 213 F.Supp. 835, 838 (E.D.Pa.1961).

In several unpublished decisions after *Blankenship,* the lower Ohio courts and one federal district court applying Ohio law

---

7. However, although the majority did not reach the issue, Justice Holmes wrote in his dissent to *Nayman v. Kilbane,* 1 Ohio St.3d at 272, 439 N.E.2d 888, that when an employee files "a claim for his injuries with the commission and [has] in fact been awarded compensation from the Workers' Compensation Fund for these injuries ... it should be held that this employee either [has] waived, or should be estopped from, bringing a civil action."

have split on the election of remedies issue presented in this case.[8] *Compare Hamlin v. Snow Metals,* Case No. 46299 (Cuyahoga County Court of Appeals Jan. 5, 1984), *cert. granted,* Case No. 84–409 (1984) (election would not apply if intentional tort existed), *Tonya v. City of Barberton,* Case No. CV82–7–2153 (Summit County Common Pleas Oct. 11, 1983) (compensation never intended to fully compensate for injury, election does not apply) and *Ritchie v. Dravo Corp.,* 585 F.Supp. 1455 (S.D.Ohio 1984) (receipt of workers' compensation means injury arose out of employment and bars claim that injuries were the result of intentionally tortious conduct) *with Gains v. Webster Manufacturing Company and City of Painesville,* Case No. 9–258 (Lake County Court of Appeals Jan. 8, 1984) (can pursue either civil action or administrative appeal but not both) *and Wanda Mae Hunter v. Litton Industries,* Case No. 82CV–03–1608 (Franklin County Common Pleas Apr. 29, 1983). *See also Varnes v. Willis Day Moving and Storage Company,* 6 OBR 506 (Lucas County Common Pleas Mar. 31, 1983) (where intentional tort not alleged, election of remedies bar applies).

Rockwell cites *Kaiser v. Strall,* 5 Ohio St.3d 91, 449 N.E.2d 1 (1983) in support of its position. In that case, however, the Ohio Supreme Court held in its syllabus:

> A party who is injured as a result of a co-employee's negligent acts, who applied for benefits under Ohio's workers' compensation statutes, and whose injury is found compensable thereunder is precluded from pursuing any additional common-law or statutory remedy against such co-employee. (Section 35 of Article II of the Ohio Constitution and R.C. § 4123.741, construed).

In refusing "to countenance duplicative, wasteful litigation," the court declined to allow an employee "to choose between workers' compensation and common-law remedies where the former has been legislatively deemed to provide recovery." *Id.* at 94, 449 N.E.2d 1. However, the decision sheds no light on how the court would decide the issue when, in a case of intentional tort by an employer, the legislature has not specifically deemed workers' compensation to provide a remedy.

■ After a thorough examination of the current state of Ohio workers' compensation law, the best judgment of this Court is that the Ohio Supreme Court, consistent with *Blankenship* and *Nayman,* would not permit an employer to shield itself behind the election of remedy doctrine when an intentional tort is alleged. The same court that expanded an employee's right to sue in intentional tort is not likely to nullify that right through a rigid and expansive application of the election of remedies doctrine. Moreover, the election of remedies rule urged by Rockwell would not relieve employers of their obligations under the OWCA nor free them from the need to insure themselves against intentional tort claims that are filed prior to the receipt of benefits. Employers would still have to be covered for both possible routes that their employees could take. Furthermore, noting again that workers' compensation statutes must be construed liberally in favor of the employees, Ohio Rev.Code § 4123.95, this Court observes that the rule urged by Rockwell would unfairly thrust employees back into the jurisdictional conundrum that the OWCA was enacted to alleviate. With no express legislative or judicial declaration to the contrary, this Court concludes that Davis must be allowed to pursue his remedies successively.[9]

Finally, this Court notes that its conclusion is again consistent with Judge Spie-

---

8. While the inconsistent results highlight the controversy surrounding this issue, even if the unpublished decisions were consistent they would not be binding on this Court. *See Ruth v. Bituminous Casualty Corp.,* 427 F.2d 290 at 292 (6th Cir.1970).

9. For a recent examination of changes in workers' compensation law and of the efficiency advantages gained by imposing a greater share of accident costs on employers *see* Note, *Exceptions to the Exclusive Remedy Doctrine of Workmens' Compensation Statutes,* 96 Harv.L.Rev. 1641 (1983).

gel's excellent opinion in *Gross v. Kenton Structural & Ornamental Ironworks.* After reviewing *Blankenship, Nayman,* and the unpublished state court opinions cited above, he concluded:

> ... The Supreme Court's intent in *Blankenship* was obviously to increase the protection available to the worker, not limit it. To hold that an employee allegedly injured by his employer's intentional tort must forego the guaranteed protection of the Workers' Compensation Act in order to gamble on being able to prevail in a common law action against his employer runs counter to the goals expressed in *Blankenship.*

\*     \*     \*     \*     \*     \*

In summary, we conclude that the *Blankenship* action should be viewed as a supplemental remedy, rather than as an exclusive remedy, where an employee alleges injury resulting from his employer's intentional tort. Accordingly, we hold that an injured employee who files for and accepts workers' compensation benefits is not barred from proceeding with a common law action against the employer.

581 F.Supp. at 394, 396.

**D.  *Double Recovery***

■ While the issue of double recovery has not been briefed by the parties, it is elementary that the claimant should not be allowed to keep the entire amount of his compensation award as well as his common law damage recovery, if any. Supra, *Sun Ship,* 447 U.S. at 723–24, 100 S.Ct. at 2438; *Landry v. Carlson Mooring Service,* 643 F.2d at 1088. Ohio follows a collateral source rule which permits an employee to recover the full amount of damages in a negligence action against a third party tortfeasor without deducting awards made under the compensation system. *Knappenberger v. Bittner,* 524 F.Supp. 777 (W.D. Pa.1981); *Truscon Steel Co. v. Trumbull Cliffs Furnace Co.,* 120 Ohio St. 394, 166 N.E. 368 (1929). There is, however, ample precedent in the Ohio workers' compensation statutes themselves to enable Rock-

well to set off any damages awarded to Davis against payments already made in the form of workers' compensation. *See, e.g.,* Ohio Rev.Code § 4123.54 (benefits or damages recovered under laws of another state); § 4123.56 (prior temporary disability benefits paid under insurance, or other program, fully funded by employer); § 4123.75 (upon final judgment against non-complying employer, any sum recovered reimbursed to the commission). *See also Tonya v. City of Barberton* (suggests compensation fund could be reimbursed under theory of subrogation). If the trier of fact determined that an intentional tort occurred, Rockwell should be able to offset the benefits previously paid. Double recovery would thus be avoided.

**IV.**

■ Workmens' compensation is social legislation designed to benefit the injured employee and does not prevent that employee from seeking out the true wrongdoer whenever possible. For the reasons set forth above, the motion for summary judgment is denied.

IT IS SO ORDERED.