643 F.2d 1080
 Wilson P. LANDRY, Petitioner,
v.
CARLSON MOORING SERVICE and Houston General Insurance
Company, Respondents.
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, U.S.
DEPARTMENT OF LABOR, Petitioner,
v.
CARLSON MOORING SERVICE and Houston General Insurance
Company, Respondents.
 Nos. 79-1274, 79-1479.
 United States Court of Appeals, Fifth Circuit.
 April 27, 1981.
Rehearing and Rehearing En Banc Denied May 28, 1981.
 
 Mandell & Wright, Stephen M. Vaughan, Houston, Tex., Gravel, Robertson & Brady, David W. Robertson, Alexandria, La., for petitioner.
 Mehaffy, Weber, Keith & Gonsoulin, Daniel V. Flatten, Beaumont, Tex., Brian Raymond Davis, Austin, Tex., for respondents in both cases.
 Stewart E. Niles, Jr., Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Madeleine Fischer, New Orleans, La., amicus curiae, for Louisiana Shipbuilding & Repair Ass'n.
 Laurie M. Streeter, Joshua T. Gillelan, II, Atty., U.S. Dept. of Labor, Washington, D.C., for petitioner.
 Petitions for Review of an Order of the Benefits Review Board.
 Before TJOFLAT, POLITZ and HATCHETT, Circuit Judges.
 TJOFLAT, Circuit Judge:
 
 
 1
 Wilson Landry and the Director, Office of Workers' Compensation Programs, United States Department of Labor, have filed these consolidated petitions for review of a decision of the United States Department of Labor Benefits Review Board precluding Landry from asserting a right to compensation under the Longshoremen's and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. Sec. 901 et seq. (1976). (For convenience, we hereinafter refer to Landry and the Director in the singular.) We reverse the decision of the Board.
 
 
 2
 * Petitioner suffered a heart attack on February 18, 1974, while employed by respondent, Carlson Mooring Service, at Port Arthur, Texas. Thereafter, he filed compensation claims against his employer under the LHWCA and the Texas Workmen's Compensation Act, Tex.Rev.Civ.Stat.Ann. arts. 8306 et seq. (Vernon). The Texas Industrial Accident Board dismissed petitioner's state workers' compensation claim, but on review the state district court reversed, holding that Landry could seek relief under the Texas act. At this juncture, the parties settled the case. Pursuant to the requirements of Texas law, the parties submitted their settlement of the worker's compensation claim to the Texas court for formal entry of judgment. See Tex.Rev.Civ.Stat. art. 8307 Secs. 5 & 12 (Vernon). The final judgment specified that Landry was to receive the lump sum of $20,000 "in full settlement and satisfaction of all claims and causes of action ... on account of personal injuries sustained by plaintiff ..." Brief for Respondent at 3. Of this amount, $5,000 was awarded to petitioner's attorney.
 
 
 3
 Upon payment of this lump sum, petitioner executed a general release prepared by his employer's insurance carrier. In pertinent part, that release purported to discharge the insurer's liability for all
 
 
 4
 "claims ... or kind of action whether at common law or under any statute, state or federal ... growing out of ... personal injuries alleged to have been sustained and suffered by Wilson P. Landry ..."
 
 
 5
 Record, vol. 1 at 23. After executing this release, Landry withdrew his Longshoremen's Act claim.
 
 
 6
 Landry later reopened his LHWCA claim. In that action, the administrative law judge awarded compensation. On appeal to the Benefits Review Board, however, the administrative law judge was reversed. The Board held that Landry was precluded from pursuing his LHWCA claim by the doctrines of res judicata, full faith and credit, and election of remedies. Reasoning that Texas courts would accord res judicata status to judicial approval of a compensation settlement, the Board ruled that Magnolia Petroleum Co. v. Hunt, 320 U.S. 430, 64 S.Ct. 208, 88 L.Ed. 149 (1943), required it to extend full faith and credit to that final judgment when it was offered as a bar to prosecution of the LHWCA claim. As an alternate, independent ground of decision, the Board held that Landry had elected to pursue his state compensation remedy despite the simultaneous availability of relief under LHWCA, and thus the doctrine of election of remedies prevented him from asserting his rights under the LHWCA. This appeal followed.
 
 II
 
 7
 It is undisputed that petitioner's employment brought him under the coverage of the Longshoremen's and Harbor Workers' Compensation Act, and that his injury was compensable. The only issues presented for review are whether the doctrines of full faith and credit or election of remedies preclude Landry's reassertion of his LHWCA claim, and, if not, whether his compensation claim under LHWCA should be decreased by the full amount of his state compensation award or decreased by the amount of that award less the sum awarded to his attorney.A
 
 
 8
 The crux of respondent's defense is that full faith and credit, as mandated by 28 U.S.C. Sec. 1738 (1976),[1] requires a ruling that the judicially approved settlement of Landry's state compensation claim bars his subsequent assertion of a remedy under the LHWCA. It is not contended that the LHWCA claim was actually litigated in the state courts--it is abundantly clear that the courts of Texas have no power to either entertain LHWCA claims or to approve settlements of them. See Newport News Shipbuilding & Dry Dock, 583 F.2d 1273, 1278 (4th Cir.1978), cert. denied, 440 U.S. 915, 99 S.Ct. 1232, 59 L.Ed.2d 465 (1979). See also 33 U.S.C. Secs. 915(b) & 916 (1976). Rather, the argument is that Texas law provides that recourse to state workers' compensation remedies is, once pursued to final judgment, the exclusive course available to a litigant. Respondent asserts that availing oneself of the Texas courts for satisfaction of a claim based upon a work-related injury necessarily entails abandonment of alternative claims because Texas courts would treat the Texas judgment as a final adjudication of all such claims. Other tribunals, it is argued, including federal administrative tribunals, are required to give the same degree of finality to Texas judgments as those judgments are entitled to in the courts of Texas. Thus, the Texas judgment, precluding as it does all further injury-based claims in Texas, would similarly preclude all other such claims when presented to the courts of other jurisdictions.
 
 
 9
 The Benefits Review Board adopted this position, citing Magnolia Petroleum Co. v. Hunt, 320 U.S. 430, 64 S.Ct. 208, 88 L.Ed. 149 (1943), as controlling authority. The issue presented in Magnolia was whether a personal injury award under the Texas workers' compensation act barred further recovery, based on the same injury, under the workers' compensation law of Louisiana. The Court held that it did, and in so ruling articulated narrowly the issue for decision:
 
 
 10
 Here both Texas and Louisiana have undertaken to adjudicate the rights of the same parties arising from a single injury sustained in the course of employment under the same contract. Each state has awarded to respondent compensation for that injury. But whether the Texas award purported also to adjudicate the rights and duties of the parties under the Louisiana law or to control persons and courts in Louisiana is irrelevant to our present inquiry. For Texas is without power to give extraterritorial effect to its laws.... The significant question in this case is whether [full faith and credit] has deprived Louisiana of the power to deny that the Texas award has the same binding effect on the parties in Louisiana as it has in Texas.
 
 
 11
 320 U.S. at 440, 64 S.Ct. at 214.
 
 
 12
 Landry argues that, while the issue for decision in his case initially appears identical to that presented in Magnolia, Magnolia need not be followed because it has been preempted by Industrial Commission of Wisconsin v. McCartin, 330 U.S. 622, 67 S.Ct. 886, 91 L.Ed. 1140 (1947). Further, Landry asserts that even if Magnolia maintains vitality after McCartin, the unique federal power over admiralty mandates according priority to LHWCA remedies despite the requirements of state law. We emphasize that we do not reach Landry's second contention, as the resolution of his case may be achieved through reconciling the precedential implications of Magnolia and McCartin. See Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 346-347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (Brandeis, J., concurring).
 
 
 13
 The Supreme Court was faced recently with an issue seemingly dispositive of Landry's case. In Thomas v. Washington Gas Light Company, 448 U.S. 261, 100 S.Ct. 2647, 65 L.Ed.2d 757 (1980), the petitioner had received a disability award under the Virginia Workmen's Compensation Act. "[A]s a matter of Virginia law, the Virginia award excluded any other recovery 'at common law or otherwise' on account of the injury in Virginia." Id. at 265 n. 4, 100 S.Ct. at 2652 n. 4. Thereafter, petitioner sought and received benefits under the District of Columbia Workmen's Compensation Act which, for all purposes relevant here, is an exact duplicate of the LHWCA. See id. at 264 n. 2, 100 S.Ct. at 2652 n. 2. On appeal, the Fourth Circuit reversed, holding that allowing recovery under the District of Columbia scheme would deny full faith and credit to the Virginia proceeding.
 
 
 14
 The Supreme Court reversed the Fourth Circuit, and allowed recovery under the District of Columbia compensation act. We are bound by the precedential impact of that decision, and must apply its teachings here. As best we can discern, Thomas requires reversal of the Benefits Review Board.
 
 
 15
 Although the issue for decision in Thomas was clear, the impact of the Supreme Court's holding is not. The Thomas court was faced squarely with the question of whether the ratio deciendi of Magnolia survived McCartin. As adverted to earlier, the Magnolia Court held that a Louisiana award of workers' compensation following an award based on the same injury obtained under the Texas workers' compensation act was barred by the dictates of full faith and credit. Some four years after Magnolia, however, the Supreme Court decided McCartin. There, in apparent self-contradiction, the Court allowed a litigant to recover under the Wisconsin workers' compensation scheme despite earlier receipt of an award for the same injury under Illinois' compensation act. Although grounds existed to distinguish McCartin from Magnolia, see 330 U.S. at 629-630, 67 S.Ct. at 890, the Court instead chose to circumscribe the impact of Magnolia. Full faith and credit, the Court reasoned, requires preclusion of a second workers' compensation recovery under the law of another state only if the law of the state of initial recovery made it unmistakably clear that by seeking the first award the litigant was abandoning all further injury-based compensation claims. Applying this reasoning, the court held that
 
 
 16
 [T]here is nothing in the [Illinois] statute or in the decisions thereunder to indicate that it [the initial award] is completely exclusive, that it is designed to preclude any recovery by proceedings brought in another state for injuries received there in the course of ... employment. And in light of the rule that workmen's compensation laws are to be liberally construed in the furtherance of the purpose for which they were enacted, we should not readily interpret such a statute so as to cut off an employee's right to sue under other legislation passed for his benefit. Only some unmistakable language by a state legislature or judiciary would warrant our accepting such a construction. Especially is this true where the rights affected are those arising under legislation of another state and where the full faith and credit provision ... is brought into play.
 
 
 17
 McCartin, 330 U.S. at 627-28, 67 S.Ct. at 889 (emphasis added) (citations omitted).
 
 
 18
 Thomas, therefore, presented the issue of how unmistakable state law must be for Magnolia to control a litigant's attempt to secure a second workers' compensation award under the law of a second state. Rather than resolving this question, however, a plurality of the Supreme Court simply held that
 
 
 19
 [A] State has no legitimate interest within the context of our federal system in preventing another State from granting a supplemental compensation award when that second State would have had the power to apply its workmen's compensation law in the first instance. The Full Faith and Credit Clause should not be construed to preclude successive workmen's compensation awards. Accordingly, Magnolia Petroleum Co. v. Hunt should be overruled.
 
 
 20
 Thomas, 448 U.S. at 261, 100 S.Ct. at 2650. The plurality reached this holding through a substantial reevaluation of the doctrine of full faith and credit. See id. at 269-286, 100 S.Ct. at 2655-2663. Three other justices, however, crucial to the efficacy of the plurality's decision, concurred in the reversal of the Fourth Circuit on significantly different grounds. Instead of re-interpreting the requirements of full faith and credit and disowning Magnolia, these three justices, see id. at 286, 100 S.Ct. at 2663, would read Magnolia and McCartin together and hold that "since Virginia's Workmen's Compensation Act lacks the 'unmistakable language' which McCartin requires if a workmen's compensation award is to preclude a subsequent award in another State", id. at 290, 100 S.Ct. at 2665, Magnolia would not demand that the District of Columbia give preclusive effect to the Virginia ruling.
 
 
 21
 Because "the holding of the Court may be viewed as that position taken by those Members who concurred in the judgment on the narrowest grounds", Gregg v. Georgia, 428 U.S. 153, 169 n. 15, 96 S.Ct. 2909, 2923 n. 15, 49 L.Ed.2d 859 (1976) (opinion of Justice Stewart); see also Barksdale v. Blackburn, 639 F.2d 1115, 1120 (5th Cir.1981) (en banc), we believe that despite the broad language of the plurality in Thomas, we must reach our decision on the more limited ground provided by the concurring justices.[2] It appears that a majority of the justices could agree that the unmistakable language requirement of McCartin should control disposition of a case otherwise on all fours with Magnolia.[3] See Thomas, 448 U.S. at 276, 100 S.Ct. at 2658 (Opinion of Justice Stevens); id. at 289, 100 S.Ct. at 2665 (Opinion of Justice White) ("I agree with the plurality that McCartin, rather than Magnolia, is controlling as between the two precedents ...). We therefore will apply the McCartin test to Landry's case.
 
 
 22
 Absent unmistakable language, in either the Texas Workmen's Compensation Act or the cases construing it, declaring recovery under the Texas act a final adjudication of all claims possibly arising from the injury, McCartin requires a finding that a subsequent recovery under the workers' compensation act of another jurisdiction is proper. Thus, the issue here is whether the law of Texas provides such unmistakable language. We find that it does not.
 
 
 23
 Respondent offers three Texas statutes to support its assertion that Texas unmistakably provides that recovery under its workers' compensation act is intended to be exclusive. In evaluating the impact of these statutes, we are guided by the commentary of the Supreme Court. Discussing the McCartin test, the Court emphasized the strictness of the unmistakable language requirement; of all the states,
 
 
 24
 [a]pparently only Nevada's workmen's compensation act contains the unmistakable language required under the McCartin rule. Nev.Rev.Stat. Sec. 616.525 (1979) provides in part: "... [I]f an employee who has been hired or is regularly employed in this state receives personal injury by accident arising out of and in the course of such employment outside the state, and he ... accepts any compensation or benefits under the provisions of this chapter, the acceptance of such compensation shall constitute a waiver by such employee ... of all rights and remedies against the employer at common law or given under the laws of any other state and shall further constitute a full and complete release of such employer from any and all liability arising from such injury ..." (Emphasis added.)
 
 
 25
 Thomas, 448 U.S. at 275 n. 21, 100 S.Ct. at 2657 n. 21. Viewing the statutes offered by respondent in this light, it is clear that their language is inadequate. First, respondent presents us with Tex.Rev.Civ.Stat.Ann. art. 8307, Sec. 5 (Vernon), which reads in relevant part:
 
 
 26
 Notwithstanding any other provision of this law, as amended, no award of the Board, and no judgment of the court, having jurisdiction of a claim against the [insurance carrier] for the cost or expense of items of medical aid, hospital services, nursing, chiropractic services, medicines or prosthetic appliances furnished to an employee under circumstances creating a liability therefor on the part of the [insurance carrier] under the provisions of this law, shall include in such award or judgment any cost or expense of any such items not actually furnished to and received by the employee prior to the date of said award or judgment. The first such final award or judgment rendered on such claim shall be res judicata of the liability of the [insurance carrier] for all such cost or expense which could have been claimed up to the date of said award or judgment and of the issue that the injury of said employee is subject to the provisions of this law with respect to such items, but shall not be res judicata of the obligation of the [insurance carrier] to furnish or pay for any such items after the date of said award or judgment. After the first such final award or judgment, the Board shall have continuing jurisdiction in the same case to render successive awards ...
 
 
 27
 As we read this provision, there is no stated intent to make an award under Texas law conclusive of litigant's rights under the law of another jurisdiction, and it is clear evidence of that intent which McCartin requires to be unmistakably present.
 
 
 28
 Second, Tex.Rev.Civ.Stat.Ann. art. 8306, Sec. 19 (Vernon), the statute relied upon in Magnolia, is said to preclude Landry's recourse to the LHWCA:
 
 
 29
 "If an employee, who has been hired ... in this State, sustains injury in the course of his employment he shall be entitled to compensation according to the law of this State even though such injury was received outside of the State, ... Providing, ... that no recovery can be had by the injured employee hereunder in the event he has elected to pursue his remedy and recovers in the state where such injury occurred."
 
 
 30
 We see no way in which this statute can be relevant to an asserted preclusion of Landry's recourse to his compensation remedy under the LHWCA. As the Supreme Court has noted:
 
 
 31
 In Magnolia, the Court noted the existence of a Texas statute precluding a supplemental award in Texas when an injured worker had obtained an award under the workmen's compensation law of another State. 320 U.S. at 435, 64 S.Ct. at 211. But that provision, of course, was directed not at the effect Texas desired a Texas award to be given in a second State, but rather at the converse situation. That is, it governed the effect that the Texas Industrial Accident Board had to give to an award previously rendered in another State. See id., at 454, 64 S.Ct. at 220 (Black, J., dissenting). While the Texas statute so understood may be obliquely probative of the Texas Legislature's intent as regards the effect to be given a Texas award in another State, that intent is surely not indicated with the unmistakable language required by McCartin.
 
 
 32
 Thomas, 448 U.S. at 275 n. 21, 100 S.Ct. at 2657-58 n. 21.
 
 
 33
 Finally, respondent presents Tex.Rev.Civ.Stat.Ann. art. 8306, Sec. 3 (Vernon): "[Employees covered by the Texas insurance program] shall have no right of action against their employer ... for damages for personal injuries ... but such employees ... shall look for compensation solely to the [insurance carrier]." This statute, and others like it, have been consistently held not to include the unmistakable language necessary to satisfy McCartin. See Thomas, 448 U.S. at 275, 100 S.Ct. at 2658, and numerous authorities cited at id. at 275 n. 22, 100 S.Ct. at 2658 n. 22. Respondent has offered no reason for us to differ from these holdings.
 
 
 34
 The recent case law of Texas also belies respondent's position. In Johnson v. Texas Employers Insurance Ass'n, 558 S.W.2d 47 (Tex.Civ.App.1977) (writ refused, n.r.e.), the highest Texas court to consider the legality, under Texas law, of following a state workers' compensation award with recovery under the LHWCA has opined:
 
 
 35
 As to the argument that concurrent jurisdiction [state compensation and LHWCA] will result in double recovery, when the State award comes first Calbeck supra, has removed that fear [by indicating that credit for state law payments will be made against a LHWCA recovery].
 
 
 36
 Id. at 52 (emphasis added). Thus, the Texas courts have tacitly acknowledged that a Texas workers' compensation award may be followed by recovery under the LHWCA.
 
 
 37
 For the foregoing reasons, we must hold that Texas law does not provide the unmistakable intent required by McCartin. We note in concluding this portion of our opinion that respondent has placed some emphasis upon what it feels is the preclusive intent of the release executed by Landry. Three comments are in order. Initially, the release is not part of the Texas judgment, and therefore is irrelevant to the issue of full faith and credit. Second, if it has any probative value, the release indicates that the parties perceived a need, despite the judgment here offered as a bar to Landry's recourse to the LHWCA, for an agreement limiting Landry's ability to seek a supplemental award. Thus, the release itself illustrates respondent's understanding that the Texas judgment did not, by itself, necessarily bar Landry's access to his LHWCA remedy. Finally, the release is, by clear statutory command, completely ineffectual to preclude Landry's LHWCA claim. See 33 U.S.C. Sec. 915(b) (1976).
 
 B
 
 38
 Now we are able to address respondent's election of remedies defense. That doctrine precludes a litigant from pursuing a remedy which, in a prior action, he rejected in favor of a simultaneously available alternate remedy. The decision to pursue the first remedy is construed as a binding election on the part of the litigant which precludes subsequent pursuit of the alternative course. See Newport News Shipbuilding & Dry Dock v. Director, 583 F.2d 1273, 1276 (4th Cir.1978), cert. denied, 440 U.S. 915, 99 S.Ct. 1232, 59 L.Ed.2d 465 (1979). By definition, the doctrine of election of remedies is therefore inapplicable when "the second remedy which is pursued following an alleged 'election' is not theoretically irreconcilable with the first, and does not require a claimant to assume a position inconsistent with that which he took in his initial quest for relief." Id. 583 F.2d at 1277.
 
 
 39
 In Sun Ship, Inc. v. Commonwealth of Pennsylvania, 447 U.S. 715, 100 S.Ct. 2432, 65 L.Ed.2d 458 (1980), the Supreme Court held that the LHWCA, as amended, did not preempt state compensation laws. The decision recognized that, absent an indisputable state declaration precluding pursuit of an LHWCA claim after recourse to a state compensation remedy, LHWCA and state workers' compensation claims are not mutually exclusive, but, rather, are complementary remedies which may be pursued successively by the litigant. Id. at 724 n. 6, 100 S.Ct. at 2438 n. 6. Instead of precluding recourse to the LHWCA after litigation of a state compensation claim, or vice-versa, the structural relationship between the federal and state longshoremen compensation schemes merely mandates the crediting of amounts received under one system against the amount allowed by the other. Id. at 719-726, 100 S.Ct. at 2436-2439.
 
 
 40
 Given our resolution of respondent's full faith and credit defense, it is quite clear that election of remedies is irrelevant in the context of Landry's case; there is no indisputable Texas preclusion of recourse to LHWCA remedies after litigation of a Texas workers' compensation claim, and thus there is simply no basis for finding an election between mutually exclusive alternatives.
 
 C
 
 41
 Although we allow Landry to seek a supplemental award under the LHWCA, we recognize that concurrent applicability of these state and federal workers' compensation schemes does not sanction double recovery. Thus, when workers "commence their actions under state law [they] will generally be able to make up the difference between state and federal benefit levels by seeking relief under the Longshoreman's Act, if the latter applies." Sun Ship, Inc. v. Commonwealth of Pennsylvania, 477 U.S. at 723, 100 S.Ct. at 2438 (emphasis added). Landry will therefore be required to credit his Texas award against any recovery he may attain under the LHWCA.
 
 
 42
 Under Texas law, attorney fees received in workmen's compensation proceedings consist of a percentage, subject to court or Industrial Accident Board approval, of a claimant's total recovery. See Tex.Rev.Civ.Stat.Ann. art. 8306, Sec. 7(c) & (d) (Vernon). Attorney fees, therefore, are not a separate element of damages. Thus, respondent urges that in crediting the state recovery against any LHWCA award, the total state amount, undiminished by that amount subsequently allocated to Landry's attorney, should be put toward respondent's LHWCA liability.
 
 
 43
 This argument misperceives the purpose of crediting: avoidance of double recovery for compensable injuries. The amount of Landry's state award which has been allocated to his attorney did not serve as compensation for his injury, but rather as reimbursement for the expenses he incurred by having to resort to the courts for compensation. To credit that sum against an LHWCA compensation award is to mix apples and oranges; such a crediting procedure would not obviate double recovery, as the LHWCA award does not duplicate Landry's de facto recovery of litigation expenses under state law. Rather, the LHWCA award should be diminished only by state compensation the plaintiff actually realizes. See Globe Indemnity Co. v. Calbeck, 230 F.Supp. 14 (S.D.Tex.1960).
 
 
 44
 The decision of the Benefits Review Board is REVERSED, and the cause is REMANDED for proceedings consistent with our opinion.
 
 
 45
 REVERSED and REMANDED.
 
 
 
 [1]
 "The Acts of the legislature of any State, Territory or Possession of the United States, or copies thereof, shall be authenticated by affixing the seal of such State, Territory or Possession thereto
 Such Acts, records and judicial proceedings ... shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State, Territory, or Possession from which they are taken."
 
 
 [2]
 The plurality decision in Thomas appears inapposite also because it is limited to the preclusive effect of a state administrative decision, rather than of a state court judgment. See Thomas, 448 U.S. at 281-286, 100 S.Ct. at 2661-2663 (Opinion of Justice Stevens). But see id. at 286, 100 S.Ct. at 2663 (Opinion of Justice White) and id. at 290, 100 S.Ct. at 2667 (Rehnquist, J., dissenting)
 
 
 [3]
 We must emphasize that at best our determination of the precedential value of Thomas is premised on an educated guess concerning what view a majority of the Court could agree upon. See McMillan v. Escambia County, No. 78-3507, slip op. at 4317, 4321 (Feb. 19, 1981). We are not at all comfortable in so evaluating Thomas, but feel that no other avenue is available given our duty to follow the lead of the Supreme Court