IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 92-7810

_____

MARIENNE JACQUES, Individually,
and as Executrix of the Estate
of RICHARD L. JACQUES,

                                        Plaintiff-Appellant,

versus

KALMAR INDUSTRIES, AB, ET AL.,

                                        Defendants,

versus

HARTFORD ACCIDENT AND INDEMNITY CO.,

                                        Intervenor-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Texas
_____
(November 22, 1993)
(                    )

Before POLITZ, Chief Judge, HIGGINBOTHAM, Circuit Judge, and
DAVIDSON[*], District Judge.

HIGGINBOTHAM, Circuit Judge:

Today, we decide that a workman's compensation carrier's right
to subrogation under the Longshore and Harbor Workers' Compensation
Act reaches its insured worker's recovery of punitive damages from
a third-party.

_____

    [*] District Judge of the Northern District of Mississippi,
sitting by designation.

I.

Marienne Jacques sued Kalmar Industries AB, Kalmar LMV AB, Kalmar, Inc., Strachan Shipping Company, and Alfred Allen Price for the wrongful death of her husband, Richard L. Jacques. Mr. Jacques was a marine surveyor who lived in Galveston, Texas. His employer, World Marine Associates, Inc., sent him to work for Strachan at a dockyard in Mobile, Alabama. While working in Mobile, Mr. Jacques was struck and killed by a forklift manufactured by Kalmar Industries and driven by Alfred Allen Price. Hartford Accident & Indemnity Company was the compensation carrier for World Marine, pursuant to the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq. Hartford began paying death benefits to Mrs. Jacques.

Mrs. Jacques filed suit in Texas state court. Defendants removed to the United States District Court for the Southern District of Texas on the basis of diversity jurisdiction. Hartford intervened to enforce its subrogation rights under the LHWCA. When Mrs. Jacques settled with defendants Kalmar Industries and Strachan for $750,000, Hartford sought reimbursement from the settlement for the benefits it had already paid Mrs. Jacques and relief from future benefits it might owe. Mrs. Jacques and Hartford both filed motions for summary judgment on the subrogation issue. The district court granted judgment in favor of Hartford, allowing it to recover its lien of $58,531.88 from the settlement proceeds and relieving Hartford of its obligation to continue to pay benefits. Mrs. Jacques appeals only the subrogation issue. We AFFIRM.

2

II.

Mrs. Jacques argues that the LHWCA affords Hartford a subrogation right only for compensation that she might receive for her husband's death.  The parties agree that Alabama law governs Mrs. Jacques' claims against Kalmar Industries, Strachan Shipping and Price.  Mrs. Jacques argues that, under Alabama law, her claim was for punitive damages rather than compensatory damages; that her settlement did not "compensate" her.  Hartford then, she says, has no right to reimbursement from the settlement.

Mrs. Jacques' argument rests on two pillars.  First, she asserts that Alabama law allows only punitive damages, and no compensatory damages for wrongful death.  This argument has considerable force.  We need not decide the matter, however, because Mrs. Jacques must also persuade that the LHWCA does not provide a subrogation right for reimbursement from a payment of punitive damages, and we are not persuaded.

A.

Alabama law allows the spouse of a person killed as a result of a wrongful act, omission, or negligence to recover damages. Ala. Code § 6-5-410 (1993).  Alabama courts have described these damages as punitive in nature.  See, e.g., Industrial Chemical & Fiberglass Corp. v. Chandler, 547 So.2d 812, 818 (Ala. 1988) ("damages recoverable in an Alabama wrongful death action are punitive in nature") (citation omitted).  There is uncertainty, however, whether a payment for wrongful death should be considered punitive in all contexts.  Id. at 824 ("I must view damages in

3

wrongful death cases as something unique and as not punitive damages qua punitive damages.") (Houston, J., concurring). Mrs. Jacques argues that regardless of any uncertainty in categorization, damages for wrongful death are sufficiently punitive to defeat subrogation of carriers of workers' compensation insurance.

Mrs. Jacques points to the subrogation rights of insurance carriers under the Alabama state workers' compensation scheme. She argues that it is only by explicit statutory authorization under its compensation scheme that the carriers are entitled to reimbursement for recovery for wrongful death. Ala. Code § 25-5-11 (1993). Mrs. Jacques asserts that this provision is necessary because the punitive nature of a recovery for wrongful death would otherwise preclude reimbursement. The argument is logical but, as is so often the case, the reality is not so clear. The Supreme Court of Alabama, in allowing an insurance carrier to recoup from damages for wrongful death, did not explicitly address their punitive nature. See Maryland Cas. Co. v. Tiffin, 537 So.2d 469, 474 (Ala. 1988) (allowing reimbursement for wrongful death without discussing the punitive nature of the recovery). But here we stop because, as we will explain, we find the LHWCA allows carrier reimbursement from an award of punitive damages, and we need not explore further the characterization of awards for wrongful death under Alabama law.

4

B.

We have not yet addressed whether a carrier of workers' compensation insurance has a right to subrogate under the LHWCA when the workers' third-party suit produces payment of punitive damages.

We have interpreted the LHWCA to allow recovery from a judgment or settlement for both workers' compensation benefits already paid and those yet to be paid.  Peters v. North River Ins. Co., 764 F.2d 306, 312 (5th Cir. 1985).  We have further read the Act to require similar reimbursement to an insurance provider from a suit brought under an unassigned cause of action by an employee as from a suit brought under an assigned cause of action by the carrier of workers' compensation insurance.  See Hayden v. Kerr-McGee, 787 F.2d 1000, 1004 (5th Cir. 1986) (refusing to vary recovery under subrogation lien depending on whether employer or employee brought action against third party).  Moreover, we have declined to limit reimbursement of such an insurer based on the nature of the employee's recovery.  See Hayden, 787 F.2d at 1003 (reimbursement to insurance provider depends on employee's total award, not on percentage of actual loss employee recovered); Haynes v. Rederi A/S Aladdin, 362 F.2d 345, 350 (5th Cir. 1966), cert. denied, 385 U.S. 1020 (1967) (insurance provider entitled to reimbursement from employee's recovery including compensation for pain and suffering).  The organizing principle of these decisions has been that the "insurer shall recover in full its payments from the total recovery obtained by the injured workman from a third

5

party defendant, regardless of what that recovery replaces or is termed by the court."  Haynes, 362 F.2d at 350.  See also Hayden, 787 F.2d at 1003.  That Alabama deems recovery for wrongful death to be punitive rather than compensatory in nature does not offer a basis for limiting the application of this principle.  To the contrary, Alabama's legislatively adopted policy of allowing an insurer reimbursement from a recovery for wrongful death reflects a policy choice similar to the one we find the Congress made with the LHWCA.  At least one sister circuit has reached a similar result.  In Force v. Director, Office of Workers' Compensation Programs, 938 F.2d 981 (9th Cir. 1991), the Ninth Circuit allowed reimbursement from a punitive damages award.  In doing so, the court emphasized that the LHWCA does not distinguish between different categories of damages.  The court found no reason to protect punitive damages from an insurer's subrogation rights.  Id. at 984.  We join in this view.

AFFIRMED.