**Gerald G. DITMORE, Plaintiff,**

v.

**FAIRFIELD INDUSTRIES, INC., Defendant.**

Civ. A. No. G–93–178.

United States District Court, S.D. Texas, Galveston Division.

May 4, 1994.

Robert A. Chaffin, Houston, TX, Kurt Siess, Sugarland, TX, for plaintiff.

Dan Becker, Thomas Fitzhugh, III, Houston, TX, for intervenor-plaintiff.

Willie Ben Daw, III, W.T. Womble, King Waters, Houston, TX, for defendant.

## ORDER

HUGH GIBSON, District Judge.

Before the Court is Intervenor's Motion for Summary Judgment. Plaintiff and Intervenor have submitted briefs, documentary evidence and a list of stipulated facts for the Court's consideration.

*Background*

Plaintiff Gerald G. Ditmore, a Texas resident, was hired by Defendant Fairfield Industries, Inc. in Texas and sent to Louisiana on a short-term assignment. On December 3, 1991, Ditmore suffered injuries while working aboard the Quarterboat Fairfield, a work platform operated by Fairfield on a navigable waterway.

Although the accident occurred in Louisiana, Ditmore was eligible and applied for Texas workers' compensation benefits under the extra-territorial provisions of the Texas Workers' Compensation Act. *See* Tex.Lab. Code § 406.071. The "Employer's First Report of Injury or Illness," a standardized report form completed following the incident, indicates Ditmore hurt his lower back when he slipped after stepping down into a boat. Copies of the report were forwarded by Fairfield to the Texas Workers' Compensation Commission and to Intervenor Liberty Mutual Fire Insurance Company, Fairfield's workers' compensation underwriter.

Liberty Mutual never contested the workers' compensation claim and paid a total of $42,819.32 ($26,280.00 in temporary income benefits and $16,539.38 for medical expenses) to or on behalf of Ditmore. All of these benefits were paid pursuant to the Texas Workers' Compensation Act.

Ditmore filed a Jones Act complaint on April 5, 1993. Prior to reaching trial, Ditmore and Fairfield tendered to the Court an "Agreed, Final, Take Nothing Judgment" which was entered on January 24, 1994. In this document Ditmore acknowledges that the Quarterboat Fairfield is not a vessel. Plaintiff and Defendant agree, however, that Ditmore was a seaman by virtue of being attached to a "fleet of vessels." Ditmore and Fairfield further stipulate:

> This settlement contemplates and incorporates the full amount of compensation benefits paid by Liberty Mutual Fire Insurance Co. ("Intervenor"), Intervenor to the previous action. Plaintiff and Defendant agree that all such payments made by Intervenor on behalf of Defendant, including the $42,819.32 alleged in Intervenor's Petition in Intervention, were made as Maintenance and Cure for seaman's benefits under the Jones Act.

The insurance contract between Fairfield and Liberty Mutual provided for workers' compensation coverage and expressly excluded Jones Act coverage. Because Ditmore has proclaimed his seaman status and settled his maritime claim against Fairfield, Liberty Mutual asserts that equitable principles, in addition to the sparse case law on the issue, support Liberty Mutual's right to reimbursement of the $42,819.32 paid as workers' compensation benefits.

Ditmore contends Liberty Mutual cannot recover on the basis of either subrogation—because Liberty Mutual has no statutory subrogation right—or restitution—because neither he nor Fairfield engaged in any wrongful conduct. Ditmore also argues that Liberty Mutual cannot now assert mistake as to compensability because Liberty Mutual did not contest compensability of the injury within sixty days after receiving notice of the injury as required under the Texas Workers' Compensation Act. Tex.Lab.Code § 409.021(c).

Ditmore steadfastly insists that no double recovery will result if he receives the disputed amount, and thus equity does not compel

a finding in favor of Liberty Mutual. As an alternative to ruling in Liberty Mutual's favor, Ditmore asks the Court to decline jurisdiction under the authority of 28 U.S.C.A. § 1367(c)(2), and allow the matter now before the Court to be decided "in the appropriate Texas forum."

The contested $42,819.32 has been placed in escrow pending the Court's ruling. Ditmore and Liberty Mutual agree there exists no genuine, material factual dispute and that the issue presently before the Court can be decided as a matter of law. No on-point, controlling Supreme Court or Fifth Circuit authority is available to provide unequivocal guidance for resolving the issue presented.

*Analysis*

The Texas Workers' Compensation Act exempts employers from common-law liability based on negligence or gross negligence. *Castleberry v. Goolsby Bldg. Corp.*, 617 S.W.2d 665, 666 (Tex.1981). "For covered employees, the Texas workers' compensation statute provides the exclusive remedy for injuries sustained in the course of their employment." *Rodriguez v. Naylor Indus., Inc.*, 763 S.W.2d 411, 412 (Tex.1989).

■ The Jones Act provides that "any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law [against his employer]." 46 U.S.C.App. § 688. The Supreme Court has ruled that this language provides a seaman's exclusive remedy. *North Coal & Dock Co. v. Strand*, 278 U.S. 142, 147, 49 S.Ct. 88, 89, 73 L.Ed. 232 (1928). The Texas Workers' Compensation Act and the Jones Act, consequently, provide mutually exclusive remedies for an injured worker.

■ The Supreme Court has held, when an employer is the permanent or *pro hac vice* owner of the vessel to which the employee is assigned, the employee may sue his employer under general maritime law notwithstanding that previously the employee has received compensation. *Reed v. S.S. Yaka*, 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963). Accordingly, an amphibious worker such as Ditmore may file for and receive workers' compensation benefits before the issue of seaman status is resolved. *Sharp v. Johnson Bros. Corp.*, 973 F.2d 423, 427 (5th Cir.1992).

*Credit and Reimbursement*

■ Both federal and state courts have concluded that an injured maritime worker is not allowed to recover twice for the same maritime injury—once under federal maritime law and again under the state workers' compensation plan. *See Sun Ship, Inc. v. Pennsylvania*, 447 U.S. 715, 725, 100 S.Ct. 2432, 2439, 65 L.Ed.2d 458, 466 (1980); *Miron v. All Alaskan Seafoods, Inc.*, 705 F.Supp. 518, 519 (W.D.Wash.1988); *State Dept. of Public Safety v. Brown*, 794 P.2d 108, 110 (Alaska 1990); *McFarland v. Justiss Oil Co.*, 526 So.2d 1206, 1214 (La.App. 1988); *Benders v. Board of Governors*, 636 A.2d 1313, 1314–15 (R.I.1994); *Indiana & Michigan Elec. Co. v. Workers' Compensation Commissioner*, 184 W.Va. 673, 403 S.E.2d 416, 420 (1991). Similarly, the Texas Workers' Compensation Act provides that an injured worker who elects to pursue the employee's remedy under the workers' compensation laws of another jurisdiction and who recovers benefits under those laws may not recover under the Texas act. Tex.Lab.Code § 406.075.

■ If an employer provides workers' compensation benefits to an injured employee and the injured worker is ultimately determined to be a seaman, the employer can receive a credit for these payments against the Jones Act settlement or judgment. *See, e.g., Massey v. Williams–McWilliams, Inc.*, 414 F.2d 675, 679 (5th Cir.1969), *cert. denied*, 396 U.S. 1037, 90 S.Ct. 682, 24 L.Ed.2d 681 (1970); *Jacques v. Kalmar Industries, AB*, 8 F.3d 272, 273 (5th Cir.1993). In some situations, however, the nature of the insurance coverage may preclude a set-off or credit. *See, e.g., Gauthier v. Crosby Marine Service, Inc.*, 752 F.2d 1085, 1090 (5th Cir.1985) (no set-off allowed where seaman alone purchased the insurance); *Owens v. Conticarriers & Terminals, Inc.*, 591 F.Supp. 777, 792–93 (W.D.Tenn.1984) (no set-off where medical insurance was provided as a "fringe benefit"). None of these relatively uncommon insurance-coverage circumstances are a concern in the instant case.

■  Although conceding that, under both maritime law and the Texas Workers' Compensation Act, a credit is allowed when workers' compensation benefits are paid to a seaman, Ditmore asserts that the rule is not applicable to his situation. Ditmore characterizes Liberty Mutual's claim as one of subrogation, or in the alternative, as restitution. He claims the Texas workers' compensation scheme precludes Liberty Mutual's recoupment under either theory.

In Texas, a worker's compensation carrier's right of subrogation is provided by statute. *Gautreaux v. Port Arthur*, 406 S.W.2d 531, 534 (Tex.Civ.App.—Beaumont 1966, writ ref'd n.r.e.). The Texas Workers Compensation Act expressly subrogates the carrier only to a worker's claims against third parties. Tex.Lab.Code § 417.001–.002. Ditmore concludes, therefore, that Liberty Mutual must take nothing on its claims since there exists no statutory right of subrogation to Ditmore's claims against his employer.

In the alternative, Ditmore portrays Liberty Mutual's reimbursement request as a claim for restitution pursuant to the Texas Workers' Compensation Act. The act declares that an employee who has obtained excess workers' compensation payments through fraud, misrepresentation, or fabrication, alteration, concealment or destruction of documents, is liable for full repayment of the funds plus interest. Tex.Lab.Code § 415.-008(a) and (c). According to Ditmore, he has not acted wrongfully, and restitution should not be required absent employee wrongdoing as delineated in the workers' compensation statute.

Both of Ditmore's arguments fail because Liberty Mutual is neither claiming subrogation rights nor directly seeking restitution from Ditmore pursuant to the Texas Workers' Compensation Act. Instead, Liberty Mutual wants credit and reimbursement for workers' compensation benefits paid to a worker who was not entitled to receive them. *See Commercial Union Ins. Co. v. McKinnon*, 10 F.3d 1352 (8th Cir.1993). Whatever Ditmore's status—whether a Jones Act seaman or a worker embraced by the Texas compensation act—the party liable for compensation to Ditmore, the injured employee, is Fairfield Industries, the employer. The employer's insurance arrangements are not determinative of the ultimate liability to the injured employee. As the Fourth Circuit Court of Appeals explained:

> If the plaintiff succeeds in his [Jones Act] suit, the employer may recoup the amounts already paid by deducting them when satisfying the judgment. In the event the compensation was paid by one insurer and the judgment becomes payable by another, the employer as the legal debtor in both instances may retain from the settlement of the judgment the sums necessary to reimburse the compensation carrier. The two remedies—compensation and suit—are thus made complementary. An important purpose of the compensation statutes, to provide immediate relief to an injured employee, is achieved, and the injured party's opportunity to press further remedies remains unabridged.

*Biggs v. Norfolk Dredging Co.*, 360 F.2d 360, 364 (4th Cir.1966).

Under some circumstances, courts may refuse to grant credit and reimbursement to the workers' compensation carrier. In one case, where the seaman-status issue was unresolved and thus there existed a real dispute as to which insurer was liable to an injured employee, the court held that the state workers' compensation insurer had no direct claim against the maritime liability insurer of the same employer for reimbursement of amounts paid to or on behalf of the injured employee. *Insurance Co. of North America v. Prudential Assurance Co.*, 1993 WL 500818, 1993 U.S.Dist. LEXIS 16961 (E.D.La.1993).

Another appropriate circumstance for disallowing reimbursement occurs when an untimely third party claim will deny, to the original plaintiffs in the suit, rights created by federal law. For example, a workers compensation carrier was denied a lien by the United States District Court in Rhode Island after a seaman and his employer had settled and the workers' compensation carrier, "a third party, previously unheard of," claimed a right to settlement proceeds. *Benders v. Board of Governors*, 728 F.Supp. 839, 840 (D.R.I.1990).

In the instant case, there exist no such special factors or circumstances which should preclude reimbursement. Ditmore's status as a Jones Act seaman is not in dispute and, unlike the *Benders* plaintiff, Ditmore faces no loss of rights because Liberty Mutual timely intervened prior to the execution of the Ditmore–Fairfield settlement.

■ Ditmore argues that his claim to the disputed $42,819.32 is bolstered by "undisputed evidence that the settlement between Ditmore and Fairfield included a credit for worker's compensation benefits received by him." *Plaintiff's Brief in Opposition to Intervention* at 11. The "undisputed evidence" Ditmore refers to presumably is a single sentence in the settlement agreement: "This settlement contemplates and incorporates the full amount of compensation benefits paid by [Liberty Mutual]."

It is not apparent what precise legal effect Ditmore believes this provision should have on the rights of Liberty Mutual, who was not a party to the agreement. One thing is clear: At the time Ditmore and Fairfield executed their settlement, Ditmore must have been fully aware that Liberty Mutual was the proper payor only for Texas Workers' Compensation benefits and was not liable for paying compensation pursuant to the Jones Act. By allowing the disputed amount to be deposited in an escrowed account, Ditmore surely "contemplated" that Liberty Mutual's claim for reimbursement might be valid. *See* Black's Law Dictionary at 288 (West 5th ed. 1979) (to "contemplate" means to "view or consider with continued attention; to regard thoroughly."). The Court, accordingly, concludes that the insertion of one ambiguous sentence in the Ditmore–Fairfield settlement agreement alone does not provide a legal, equitable, or policy basis for denying Liberty Mutual's request for reimbursement.

*Compensability under the Texas Workers' Compensation Act*

■ The Texas Workers' Compensation Act provides that an insurance carrier must contest compensability of an injury within sixty days of its receipt of notice of the injury. Tex.Lab.Code § 409.021(c). To reopen the issue of whether an injury to a worker is compensable under the Act re-quires a showing that there was evidence that could not reasonably have been discovered earlier. Tex.Lab.Code § 409.021(d). According to Ditmore, these provisions bar Liberty Mutual's assertion of mistake as to the compensability of Ditmore's injury as a ground for recovery.

Ditmore claims Liberty Mutual cannot assert that the agreed judgment between Fairfield and Ditmore is determinative of compensability. To support this contention, Ditmore cites Fifth Circuit authority holding that an agreed judgment is merely an enforceable contract between the parties, and is not determinative as to any issue in a dispute with a third party. *Hughes v. Santa Fe Int'l Corp.*, 847 F.2d 239, 242 (5th Cir.1988). According to Ditmore, because there has been no final disposition of his claim by the Texas Workers' Compensation Commission, no "election of remedies" has occurred.

As the Court already has noted, Liberty Mutual is not challenging Ditmore's entitlement to compensation, but merely is seeking credit and reimbursement. The requirement that compensability be challenged within 60 days, therefore, is not applicable.

Ditmore's assertion that his status as a Jones Act seaman has not been conclusively established is insupportable. He has tendered evidence to the Court confirming his seaman status, signed an agreement stipulating he was a seaman, and accepted compensation pursuant to the Jones Act. An employee has seaman status if he is assigned to a "fleet of vessels," such a fleet being defined as "an identifiable group of vessels acting under one control." *Barrett v. Chevron USA, Inc.*, 781 F.2d 1067, 1074 (5th Cir.1986) (en banc). The record establishes that Ditmore was assigned to a fleet of vessels and there exists no genuine issue of material fact concerning his status as a Jones Act seaman.

Ditmore's acceptance of Jones Act benefits was akin to accepting benefits under the law of "another jurisdiction" as contemplated by the Texas Workers' Compensation Act, and as a consequence, he should no longer recover benefits under the Texas act. *See* Tex. Lab.Code § 406.075(a). *See also* Tex.Lab. Code § 406.075(b) (even without an election,

the amount of benefits accepted under the laws of another jurisdiction are to be credited against benefits that the employee would have received had the claim been made under the Texas act). The statute compliments Texas case law holding that the election of remedies doctrine applies as a bar to the relief sought if it is affirmatively shown that the plaintiff has successfully exercised an informed choice between two or more remedies, rights or sets of facts which are so inconsistent as to constitute manifest injustice. *See Bocanegra v. Aetna Life Ins. Co.,* 605 S.W.2d 848, 851 (Tex.1980); *Texas General Indem. Co. v. Hearn,* 830 S.W.2d 257, 258 (Tex.App.—Beaumont 1992, no writ) (discussing election of remedies).

By his own actions, Ditmore has abandoned his workers' compensation claim. Only his election to take under the Jones Act, not Liberty Mutual's intervention, has affected compensability.

*Identity of Damage Elements*

■ Liberty Mutual may receive credit only against those items of loss that bear a reasonable relationship to items of loss compensated by workers compensation benefits. Credit should be allowed for: 1) the ultimate award of maintenance and cure; 2) the pecuniary loss of wages during the period of payment of the compensation benefits, and 3) medical expenses. *Massey v. Williams–McWilliams, Inc.,* 414 F.2d at 679. Credit is not given for either pain and suffering or for lost earning capacity. *Id.*

The Ditmore–Fairfield agreement specifies that the entire $42,819.32 was made as maintenance and cure for seaman's benefits under the Jones Act. This characterization of the benefits is consistent with other evidence in the record. Consequently, credit may be given for the entire $42,819.32 paid as workers' compensation by Liberty Mutual.

*Conclusion*

Plaintiff Ditmore's rationales for denying reimbursement are unpersuasive. The Court finds, as a matter of law, that Intervenor Liberty Mutual is entitled to reimbursement of all benefits paid pursuant to the Texas Workers' Compensation Act. It is, accordingly,

ORDERED that Intervenor's Motion for Summary Judgment is GRANTED.