141 F.3d 907
 1998 A.M.C. 1244, 98 Cal. Daily Op. Serv. 1609,
98 Daily Journal D.A.R. 2237
 TRANSBAY CONTAINER TERMINAL; National Union Fire Insurance
Company; F.A. Richard & Associates, Inc., Petitioners,
v.
UNITED STATES DEPARTMENT OF LABOR BENEFITS REVIEW BOARD;
United States Department of Labor Director;
Office of Workers Compensation Programs;
Lori Dermont, Respondents.
 No. 96-70843.
 United States Court of Appeals,
Ninth Circuit.
 Submitted Feb. 6, 1998.*
Decided March 6, 1998.
 
 Roy D. Axelrod, Littler, Mendelson, Fastiff, Tichy & Mathiason, San Diego, CA, for Petitioners.
 Luann B. Kressley, Atty. U.S. Dept. of Labor, Office of Solicitor, Washington, DC, for Respondents.
 Petition for Review of an Affirmance by the Benefits Review Board. BRB No. 94-3933.
 Before: WALLACE, TROTT, and HAWKINS, Circuit Judges.
 WALLACE, Circuit Judge:
 
 
 1
 Transbay Container Terminal (Transbay) and its insurers, National Union Fire Insurance Company and F.A. Richard and Associates, Inc., petition for review of an affirmance by the Benefits Review Board (Board), pursuant to Pub.L. 104-134, 110 Stat. 1321-211, 1321-219 (1996), of a decision by an administrative law judge (ALJ). The ALJ awarded benefits under the Longshore and Harbor Workers' Compensation Act (Act) to Lori Dermont based on the death of her husband, Joseph Dermont (Dermont), who suffered a fatal heart attack while employed by Transbay.
 
 
 2
 The ALJ found that Dermont had a preexisting condition of severe cardiovascular atherosclerosis, which the parties do not dispute. At issue is the ALJ's finding that Dermont's preexisting disability was not "manifest" to Transbay before Dermont's death.
 
 
 3
 Lori Dermont also obtained an award of death benefits from the California Workers' Compensation Appeals Board in June 1993. In July 1993, Lori Dermont and Transbay settled Lori Dermont's claim for penalties for Transbay's allegedly late payments. According to the terms of the settlement, Transbay agreed to pay Lori Dermont $8,700. Transbay also appeals from the ALJ's determination that it should not be credited for this payment under 33 U.S.C. § 903(e).
 
 
 4
 The ALJ and the Board exercised jurisdiction pursuant to 33 U.S.C. §§ 919(d) and 921(b)(3). Transbay timely petitioned for review; we have jurisdiction pursuant to 33 U.S.C. § 921(c), and we deny the petition for review.
 
 
 5
 * Although we review the Board decision, the Board gave no separate opinion in this case. Rather, the Board "affirmed" based upon the passage of more than one year since review was requested of the ALJ decision. Pub.L. 104-134, 110 Stat. 1321-211, 1321-219 (1996). We therefore review the ALJ decision, as affirmed by the Board, as the Board decision. Jones Stevedoring Co. v. Director, Office of Workers' Compensation Programs, 133 F.3d 683, 687 (9th Cir.1997).
 
 
 6
 We review questions of law de novo, but give " 'considerable weight' to the construction of the statute urged by the Director of the Office of Workers' Compensation Programs [ (Director) ], as he is charged with administering it." Force v. Director, Office of Workers' Compensation Programs, 938 F.2d 981, 983 (9th Cir.1991) (Force ). Deference to the Director's positions includes deference to litigating positions taken by the Director in the course of administrative adjudications. Mallott & Peterson v. Director, Office of Workers' Compensation Programs, 98 F.3d 1170, 1172 (9th Cir.1996), cert. denied, --- U.S. ----, 117 S.Ct. 1842, 137 L.Ed.2d 1046 (1997). The Board's factual findings are reviewed for substantial evidence. Sproull v. Director, Office of Workers' Compensation Programs, 86 F.3d 895, 898 (9th Cir.1996), cert. denied, --- U.S. ----, 117 S.Ct. 1333, 137 L.Ed.2d 493 (1997).
 
 II
 
 7
 We first address the question of whether substantial evidence supported the ALJ's finding, as affirmed by the Board, that Dermont's preexisting disability was not manifest to Transbay before Dermont's death.
 
 
 8
 Section 8(f) of the Act allows for payment of workers' compensation claims from a secondary fund if the employer can prove
 
 
 9
 (1) that the employee had an existing permanent partial disability prior to the employment injury; (2) that the disability was manifest to the employer prior to the employment injury; and (3) that the current disability is not due solely to the most recent injury.
 
 
 10
 Bunge Corp. v. Director, Office of Workers' Compensation, 951 F.2d 1109, 1111 (9th Cir.1991) (Bunge ), quoting Todd Pac. Shipyards v. Director, Office of Workers' Compensation Programs, 913 F.2d 1426, 1429 (9th Cir.1990); see 33 U.S.C. § 908(f)(1). "Congress sought to ensure that employers would not hesitate to hire a partially disabled person out of fear of increasing their liability in the event that a work-related injury, combined with a preexisting partial disability, resulted in a total disability." Bunge, 951 F.2d at 1110.
 
 
 11
 At issue is whether Dermont's preexisting severe cardiovascular atherosclerosis was "manifest" to Transbay before his death. "An employer need not have actual knowledge of an employee's preexisting condition. If the condition is readily discoverable from the employee's medical record in the possession of the employer, knowledge of the condition is imputed to the employer." Id. at 1111.
 
 
 12
 Transbay does not argue that Dermont's cardiovascular atherosclerosis was previously diagnosed, nor that it was discoverable from Dermont's medical record. Instead, Transbay argues that the ALJ's finding that the condition was not manifest was not supported by substantial evidence because several "risk factors" for cardiovascular disease and myocardial infarction were discoverable from Dermont's medical records. Transbay points to four recorded incidents of high blood pressure over a period of 6 years, a 20 year history of smoking two packs of cigarettes daily, a family history of diabetes mellitus, and that Dermont was an obese male.
 
 
 13
 Mere presence of certain "risk factors," however, is not legally sufficient. Without a documented diagnosis, there must be "sufficient unambiguous, objective, and obvious indication of a disability ... reflected by the factual information contained in the available records so that the disability should be considered manifest even though actually unknown by the employer." Bunge, 951 F.2d at 1111, quoting Eymard & Sons Shipyard v. Smith, 862 F.2d 1220, 1224 (5th Cir.1989) (Eymard & Sons Shipyard ); see also Currie v. Cooper Stevedoring Co., No. 88-3574, 1990 WL 284089 at * 5 (Ben.Rev.Bd. July 31, 1990) ("In order for a pre-existing condition to be manifest it must be clearly diagnosed and identified in medical records available to the employer; if a diagnosis is unstated, there must be a sufficiently unambiguous, objective and obvious indication of a disability reflected by the factual information contained in the available medical records in existence at the time of injury.").
 
 
 14
 Transbay relies unpersuasively on Director, Office of Workers' Compensation Programs v. General Dynamics Corp., 787 F.2d 723 (1st Cir.1986). There, the claimant's hypertension was documented by medical records predating his heart attack and admitted by the claimant on his employment application. Id. at 724-25. Indeed, whether the hypertension was "manifest" was not even at issue--the only issue was whether hypertension constitutes a physical impairment. Id. Even if hypertension is a physical impairment under the Act, which the Ninth Circuit has not addressed and we do not decide, the question in the present case is different: it concerns the ALJ's finding that Dermont's preexisting disability was not manifest to Transbay.
 
 
 15
 Dermont's medical records predating his death do not present "sufficient unambiguous, objective, and obvious indication of a disability ... so that the disability should be considered manifest even though actually unknown by the employer." Bunge, 951 F.2d at 1111, quoting Eymard & Sons Shipyard, 862 F.2d at 1224. The ALJ's finding that Dermont's condition was not manifest to Transbay is therefore supported by substantial evidence.
 
 III
 
 16
 Transbay also raises the issue of whether it is entitled to credit under section 3(e) of the Act for the penalties it paid Lori Dermont in the settlement under the California Workers' Compensation Act.
 
 
 17
 Section 3(e) of the Act gives offsetting credit to employers for "any amounts paid to an employee for the same injury, disability, or death for which benefits are claimed under this chapter pursuant to any other workers' compensation law." 33 U.S.C. § 903(e). This section was designed by Congress to prevent double recoveries. E.P. Paup Co. v. Director, Office of Workers' Compensation Programs, 999 F.2d 1341, 1350 (9th Cir.1993) (E.P. Paup Co.).
 
 
 18
 The parties dispute whether the penalty payments were "for the same injury, disability, or death" as the payments under the Act. The Director, as a party in interest, argues that the ALJ correctly held that the payments were not "for the same injury" because the penalty payments were strictly for Transbay's failure to perform its obligations on time. See Ponder v. Peter Kiewit Sons' Co., Nos. 88-488 and 88-488A, 1990 WL 284099 at * 7 (Ben.Rev.Bd. Sept. 28, 1990) (Ponder ). We must defer to the Director's interpretation of statutes he is charged with enforcing unless it is contrary to either the clear language of the statute or unambiguously expressed congressional intent. Estate of Cowart v. Nicklos Drilling Co., 505 U.S. 469, 475-76, 112 S.Ct. 2589, 2594-95, 120 L.Ed.2d 379 (1992) (Estate of Cowart ).
 
 
 19
 Transbay contends that the Director's position is contrary to both the plain language and purpose of the statute. It points first to the broad language "any amounts paid." This fails to account, however, for the narrowing clause immediately following: "for the same injury." To explain why the penalty payments were "for the same injury," Transbay suggests that it is sufficient that the penalty payments were "ultimately on account of the same work-related injury and death," because "for" can mean "because of," "on account of," or "in consequence of." We are not persuaded by Transbay's assertion that "payments with any tenuous connection to the injury" is the plain meaning of "amounts paid ... for the same injury."
 
 
 20
 Transbay further argues that the Director's interpretation establishes a "category-by-category credit system" that is contrary to the clear language of section 3(e). The statute itself does not discuss "categories," and the cases Transbay cites are not persuasive. Bouchard v. General Dynamics Corp., 963 F.2d 541 (2d Cir.1992), for example, merely states that the Connecticut Appellate Court rejected a claim for a benefit for a type of injury not covered by the Act because "neither the federal nor the state workers' compensation schemes contemplated a category by category credit system." Id. at 545. Garcia v. National Steel & Shipbuilding Co., No. 85-2917, 1988 WL 232775 (Ben.Rev.Bd. Oct. 27, 1988), is similarly tangential: in that case the Board held that an "employer is entitled to a credit for the entire amount of benefits paid to claimant under the California Act for each injury for which benefits were sought under the Longshore Act, regardless of the type of disability involved." Id. at * 3.
 
 
 21
 Transbay attempts to buttress its categorization of credits argument on the basis that circuit courts have reached a position similar to its proposed interpretation in cases under section 33 of the Act, which allows for employer offsets of payments employees recover from third parties, including punitive damages. That section of the Act provides that
 
 
 22
 the employer shall be required to pay as compensation ... a sum equal to the excess of the amount which the Secretary determines is payable on account of such injury or death over the net amount recovered against such third person. Such net amount shall be equal to the actual amount recovered less the expenses reasonably incurred by such person in respect to such proceedings....
 
 
 23
 33 U.S.C. § 933(f).
 
 
 24
 We have previously deferred to the Director's position that section 33 "does not call for apportionment among types of damages." Force, 938 F.2d at 984. We allowed the employer to offset economic and noneconomic damages the claimant received from a third party, relying on the phrase "net amount" in the statute. Id. This approach has also been used by two sister circuits. Jacques v. Kalmar Industries, AB, 8 F.3d 272, 274 (5th Cir.1993); Brandt v. Stidham Tire Co., 785 F.2d 329, 330-31 (D.C.Cir.1986) (per curiam). The Supreme Court used a similar analysis when interpreting section 8132 of the Federal Employees Compensation Act. See United States v. Lorenzetti, 467 U.S. 167, 173-76, 104 S.Ct. 2284, 2288-90, 81 L.Ed.2d 134 (1984). None of these opinions are relevant to the case at hand, however, because the statutes they involved, unlike section 903(e), specified that the amount credited should be the entire third-party recovery.
 
 
 25
 Transbay not only fails to show that the plain language of the statute contradicts the Director's interpretation, but also fails to present contradictory, unambiguously expressed congressional intent. See Estate of Cowart, 505 U.S. at 475-76, 112 S.Ct. at 2594-95. We have previously held that "the sole purpose of the credit doctrine [in section 903(e) ] was to prevent double recoveries." E.P. Paup Co., 999 F.2d at 1350, citing Lustig v. United States Dep't of Labor, 881 F.2d 593, 595 (9th Cir.1989) (Lustig ). The penalty payments here did not create a double recovery and do not fall under section 903(e).
 
 
 26
 The Director's interpretation is directly supported by the Board:
 
 
 27
 We hold that the State penalty is not included in the Section 3(e) credit. Section 3(e) specifically allows a credit for amounts paid for the same injury, disability or death. The penalty at issue here was not paid to compensate claimant for the same injury for which she claims benefits under the Act. Rather, it was assessed as a penalty for dilatory payment.
 
 
 28
 Ponder, 1990 WL 284099 at * 7. In addition, the most similar circuit court case, Landry v. Carlson Mooring Service, 643 F.2d 1080 (5th Cir.1981), also supports the Director's position in this case. In Landry, the Fifth Circuit refused to credit an employer with the attorney's fees the employee received in a state worker's compensation proceedings. The court explained that the employer's argument
 
 
 29
 misperceives the purpose of crediting: avoidance of double recovery for compensable injuries. The amount of Landry's state award which has been allocated to his attorney did not serve as compensation for his injury, but rather as reimbursement for the expenses he incurred by having to resort to the courts for compensation. To credit that sum against an LHWCA compensation award is to mix apples and oranges....
 
 
 30
 Id. at 1088; see also Lustig, 881 F.2d at 595 (drawing a distinction between "any amounts paid to an employee for the same injury" and "any amounts paid by an employer"). Transbay correctly points out that Lustig, like Landry, can be distinguished because the employee did not finally realize the payment; nevertheless, we are persuaded by Landry 's mode of analysis. The penalty payments here were reimbursement for the delay in payments, not compensation for Dermont's death.
 
 
 31
 We defer to the Director's position, as it is supported by the clear language and intent of the statute. Transbay may not receive credit under section 903(e) for its penalty payments.
 
 
 32
 PETITION FOR REVIEW DENIED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. P. 34(a) and Ninth Circuit Rule 34-4